CENTERIOR SERVICE COMPANY;
General Electric Company; Ashland Oil,
Incorporated, Plaintiffs–Appellants,

v.

ACME SCRAP IRON & METAL
CORPORATION, et al.,
Defendants–Appellees.

No. 97–3163.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1998.

Decided Aug. 31, 1998.

Robert Garrett Cohen, Kegler, Brown, Hill & Ritter, Columbus, OH, Jeffrey M. Karp (briefed), Thomas M. Downs (argued and briefed), Swidler & Berlin, Washington, DC, for Plaintiffs–Appellants.

Jeffrey C. Conrad, Mia T. Lombardi (briefed), McDonald, Hopkins, Burke & Haber, Cleveland, OH, for Defendants–Appellees The Standard Oil Company, Ken Chas Reserve Company.

Louis E. Tosi (argued and briefed), Douglas G. Haynam (briefed), John C. Everhardus (briefed), Emily K. Cooper, Shumaker, Loop & Kendrick, Toledo, OH, for Defendant–Appellee General Motors Corporation.

Myra L. Willis (briefed), Howard & Howard, Kalamazoo, MI, for Defendant–Appellee Chrysler Corporation.

Charles R. Schaller (briefed), Marian C. Hwang (briefed), Miles & Stockbridge, Baltimore, MD, for Defendant–Appellee Black & Decker, Inc.

James T. Millican (briefed), Bertsch, Millican & Winslow, Cleveland, OH, for Defendant–Appellee The Glidden Company.

Carter E. Strang (briefed), Henry E. Billingsley, II, Arter & Hadden, Cleveland, OH, for Defendant–Appellee Atlantic Richfield Co., et al.

Arthur I. Harris, Asst. U.S. Attorney, Office of U.S. Attorney, Cleveland, OH, Jeremy D. Heep (argued and briefed), U.S. Department of Justice, Environment and Natural Resources, Washington, DC, Ronald M. Spritzer, Mr., Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendants–Appellees Secretary of Defense, Secretary of Veterans Affairs, Administrator of National Aero and Space Administration.

James L. McCrystal, Jr. (briefed), Martindale, Brzytwa & Quick, Cleveland, OH, for Defendant–Appellee Pepsico, Inc.

Gary W. Johnson (briefed), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Defendants–Appellees United Parcel Service, Ohio Broach and Machine Company.

William E. Coughlin (briefed), David J. Carney, Robert J. Bonko, Calfee, Halter & Griswold, Cleveland, OH, for Defendants–Appellees Union Carbide Corp., Best Sand Corporation.

Steven F. Faeth (briefed), Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for Defendant–Appellee Westinghouse Electric Corporation.

Charles J. Cochran, Jr. (briefed), Casalinova & Cochran, Fairlawn, OH, for Defendant–Appellee Holland Oil Company.

Pamela N. Hultin, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, for Defendant–Appellee Garfield Heights Coachlines.

Jack A. Van Kley, John W. Edwards, Jones, Day, Reavis & Pogue, Columbus, OH, for Defendants–Appellees East Ohio Gas Company and Columbia Gas of Ohio, Inc.

John L. Shailer, Columbia Gas Distribution Companies, Columbus, OH, for Defendant–Appellee Columbia Gas of Ohio, Inc.

Mary M. Bittence, Baker & Hostetler, Cleveland, OH, for Defendants–Appellees Shell Oil Company, The Lincoln Electric Company.

Before: JONES, DAUGHTREY, and COLE, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

The issue confronting this court on interlocutory appeal is whether a party who is itself potentially responsible for the response costs of a hazardous waste cleanup under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"), is permitted to bring a joint and several cost recovery action against other potentially responsible parties ("PRPs") under § 107(a) of CERCLA, or is limited to actions for contribution. For the following reasons, we find that PRPs are precluded from seeking joint and several cost recovery under § 107(a) and **AFFIRM** the judgment of the district court.

## I. Background

The facts of this case are undisputed. From approximately 1938 until 1990, the

Huth Oil Services Company operated a waste oil reclamation facility at the Huth Oil Site. The site was owned by plaintiff Ashland Oil Incorporated from 1964 until 1981,[1] when Huth Oil purchased the property from Ashland. The site contained approximately 33 oil storage tanks with a 992,000 gallon storage capacity. J.A. (Joint Appendix) at 582. Numerous companies deposited waste oil at the site during its more than 40 years of operation.

Between 1983 and 1989, the United States Environmental Protection Agency ("EPA") and the Ohio Environmental Protection Agency inspected the site, and on several occasions found that the storage tanks and saturated soils at the site were contaminated with hazardous substances, mainly poly chlorinated biphenyl's. The EPA also noted that the site was in a dilapidated condition, that its oil tanks were corroded, and that unauthorized access to the site was possible through gaps in the fence surrounding it. J.A. at 589. Subsequently, after an investigation, the EPA identified four PRPs that played a hand in the poor conditions of the site: (1) Ashland Oil, the current owner/operator of the site; (2) Huth Oil, a previous owner; (3) Cleveland Electric Illuminating Co.;[2] and (4) plaintiff General Electric Company. The EPA found that the latter two parties had each arranged for disposal of hazardous substances at the site.

On October 5, 1990, based on the above findings, the EPA issued a unilateral Administrative Order to the plaintiffs[3] under CERCLA § 106, which required the plaintiffs to undertake and complete an emergency cleanup of the site.[4] To this end, the plaintiffs assert that they incurred approximately $9.5 million in costs relating to the cleanup required by the § 106 order.[5] After beginning the cleanup efforts, the plaintiffs conducted their own investigation to identify other potentially responsible parties for the site contamination. The plaintiffs identified approximately 250 parties that had arranged for the disposal of waste oil and other hazardous substances at the site. At no point, however, did the plaintiffs contest their status as PRPs, assert defenses to liability under § 107(a), or seek reimbursement for their response costs from the government under CERCLA § 106(b).[6]

In August 1994, the plaintiffs filed five one-count claims for relief against more than 125 defendants seeking to recover their cleanup costs from these parties under § 107(a) of CERCLA, and asserting that the defendants were jointly and severally liable

---

1. Prior to 1964, Huth Oil leased the property from the Columbia Refining Company. J.A. at 588.

2. Plaintiff Centerior Service Company is the parent corporation for the Cleveland Electric Illuminating Company.

3. Hereinafter "plaintiffs" refer to Centerior Service Co., General Electric Co. and Ashland Oil Inc.

4. The EPA issues a § 106 order when it finds an "imminent and substantial endangerment to the public health or welfare or environment" due to site contamination. 42 U.S.C. § 9606(a). If a party fails to comply with a § 106 order it faces penalties of up to $25,000 per day and damages in an amount up to three times the cleanup costs. J.A. at 596.

5. The cleanup effort was mammoth and entailed: securing the site; sampling; developing work-plans; removing, storing, and disposing of all free standing oil in dikes surrounding the oil storage tanks; repairing cracked or slumping dikes; dismantling tank equipment; removing,

treating, and disposing all hazardous substances or waste-contaminated liquids, soils and sludges; and installing a compacted clay cover over the cleaned areas. J.A. at 591–93.

6. CERCLA § 106(b) allows a party who conducts a waste site cleanup pursuant to a § 106 administrative order to seek reimbursement from the government within 60 days after the cleanup if the party is not liable under CERCLA or by establishing that the cleanup order was arbitrary, capricious or otherwise unlawful. 42 U.S.C. § 9606(b); see also Kelley v. EPA, 15 F.3d 1100 (D.C.Cir.1994); Employers Insurance of Wausau v. Clinton, 848 F.Supp. 1359 (N.D.Ill.1994), aff'd 52 F.3d 656 (7th Cir.1995).

A PRP may prove it is not liable under CERCLA by asserting that the site contamination was due to an act of God, an act of war, or that a third party over whom it had no control is solely responsible for the site contamination. 42 U.S.C. § 9607(b); United States v. Alcan Aluminum Corp., 990 F.2d 711, 721 (2d Cir.1993); City of Detroit v. A.W. Miller, 842 F.Supp. 957, 964 (E.D.Mich.1994).

for the costs.[7] On August 5, 1995, the cases were consolidated for the purposes of discovery and pre-trial proceedings. Subsequently, ten motions were filed by various parties all concerning whether the plaintiffs were permitted to bring a joint and several cost recovery action against the defendants under § 107(a) of CERCLA, or whether they were limited to bringing contribution claims under CERCLA § 113(f), 42 U.S.C. § 9613(f).

On September 13, 1996, the district court resolved all ten motions by ruling that the plaintiffs, as PRPs, were limited to bringing a cause of action for contribution under § 113(f) of CERCLA, and that all of the plaintiffs' original complaints pleading joint and several cost recovery actions under § 107(a) would be construed as asserting a contribution claim under § 113(f). On October 4, 1996, the plaintiffs filed a motion to amend the district court's order for certification under 28 U.S.C. § 1292(b). The district court granted the motion on December 3, 1996, and on December 13, 1996, the plaintiffs filed a petition for permission to appeal the district court's order pursuant to § 1292(b) and Fed. R.App. P. 5. This court granted the plaintiffs' petition on February 13, 1997.

## II. Discussion

### A.

We have jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and this court's order granting the parties' permission to appeal. The issue on appeal involves a question of statutory interpretation and construction, which is a question of law subject to *de novo* review. *See United States v. Spinelle*, 41 F.3d 1056, 1057–58 (6th Cir.1994); *Covill v. United States*, 959 F.2d 58, 61 (6th Cir.1992).

### B.

CERCLA is the primary statutory means by which harmful or potentially harmful hazardous waste disposal sites are remediated. The statute grants the EPA broad enforcement powers and options. For example, the EPA may on its own initiate response actions to clean up a hazardous waste site using monies from the Hazardous Substances Superfund, CERCLA § 104, 42 U.S.C. § 9604, and then recover its response costs from PRPs. It may also require the private PRPs to themselves undertake response actions by either issuing a § 106 administrative order requiring remedial action, or by seeking judicial injunctive relief requesting a court to compel the party to initiate the cleanup. 42 U.S.C. § 9606(a).

Once a site has been cleaned up, CERCLA provides two causes of action for parties to recover the response costs incurred by the cleanup effort: joint and several cost recovery actions governed exclusively by § 107(a), *see* 42 U.S.C. § 9607(a), and contribution actions as set forth in § 113(f). *See id.* § 9613(f)(1). Section 107(a)(4) provides in pertinent part that PRPs[8] are liable for:

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

42 U.S.C. § 9607(a)(4)(A) & (B). The government may seek costs under § 107(a)(4)(A), and private parties have an implied private right of action for response costs through § 107(a)(4)(B). *See Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). In order to establish a prima facie case for cost recovery under § 107(a), a plaintiff must prove four elements: (1) the site is a "facility"; (2)

---

7. The private parties have adopted one brief on appeal. The United States Department of Justice, representing various governmental agency defendants, has submitted a separate brief.

8. There are four categories of PRPs: (1) the current owner or operator of a waste facility; (2) any previous owner or operator during any time

in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility. *See* 42 U.S.C. § 9607(a)(1)-(4).

a release or threatened release of hazardous substance has occurred; (3) the release has caused the plaintiff to incur "necessary costs of response"; and (4) the defendant falls within one of the four categories of PRPs. *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir.1989); *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir.1990).

■ Liability for cost recovery actions brought against PRPs under § 107(a) is strict. *United States v. Colorado & Eastern Railroad Co.*, 50 F.3d 1530, 1535 (10th Cir. 1995); *Farmland Indus. v. Morrison–Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir. 1993). Liability is also generally joint and several on any defendant PRP regardless of fault. *Colorado & Eastern Railroad*, 50 F.3d at 1535; *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997). After bringing a cost recovery action, plaintiffs must prove only that each defendant is a "liable" party and not that defendants are responsible for a certain share of the plaintiff's response costs. Only if a defendant can affirmatively demonstrate that the harm is divisible, will damages from a cost recovery action brought pursuant to § 107(a) be apportioned according to fault. *Colorado & Eastern Railroad*, 50 F.3d at 1535; *see also New Castle*, 111 F.3d at 1121 n. 4; *O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir.1989). Given the nature of hazardous waste disposal, rarely if ever will a PRP be able to demonstrate divisibility of harm, and therefore joint and several liability is the norm. *See Colorado & Eastern Railroad*, 50 F.3d at 1535.

■ Prior to 1986, while it was clear that private parties could bring joint and several cost recovery claims pursuant to § 107, it was not clear that private parties were entitled to contribution claims under that section. Many courts, therefore, recognized an implied right of action for contribution for PRPs who had been sued under § 107, but had incurred response costs in excess of their pro rata share. *Id; see also County Line v. Tinney*, 933 F.2d 1508, 1515–16 (10th Cir. 1991); *Walls v. Waste Resource Corp.*, 761 F.2d 311 (6th Cir.1985); *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1425 (S.D.Ohio

1984). In 1986, however, Congress amended CERCLA by enacting the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986). SARA explicitly provided for a right of contribution for private parties to recoup costs associated with a hazardous waste cleanup. SARA states in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section[.] ... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.... Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1). In actions seeking contribution, unlike those for joint and several cost recovery, the burden is placed on the plaintiff to establish the defendant's equitable share of response costs. *Adhesives Research Inc. v. American Inks & Coatings Corp.*, 931 F.Supp. 1231, 1244 n. 13 (M.D.Pa. 1996); *United States v. Taylor*, 909 F.Supp. 355, 361 (M.D.N.C.1995). Liability is not joint and several, but merely several. *See United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 229 (W.D.Mo.1985). In addition, SARA added a new statute of limitations for § 107(a), and a statute of limitations for contribution claims under § 113(f). It established a six-year statute of limitations for cost recovery claims brought under § 107(a), and a three-year statute of limitations for contribution claims. 42 U.S.C. § 9613(g)(2)-(3). Finally, the new amendment provided a contribution protection provision for settling parties. Under the provision, parties who resolve liability to the United States in an administrative or judicially approved settlement cannot be sued by other PRPs for contribution. 42 U.S.C. § 9613(f)(2).

Not surprisingly, after the adoption of SARA, controversy arose regarding whether PRPs who themselves contributed to the contamination of a hazardous waste site could seek joint and several cost recovery as well as contribution. PRPs who were the initial parties to undertake and pay for cleanup understandingly wished to seek joint and several cost recovery solely under § 107, which imposed strict liability against defendants and would allow them to sue only one party for the entire response costs regardless of that party's degree of fault.[9]

While there have been numerous decisions by district courts finding on both sides of the issue, thus far, the First, Third, Seventh, Ninth and Tenth Circuits, who have all directly addressed the issue, have all held that PRPs are precluded from seeking joint and several cost recovery under § 107(a). *See United Technologies Corp. v. Browning–Ferris Indus. Inc.*, 33 F.3d 96, 101 (1st Cir.1994), *cert. denied*, 513 U.S. 1183, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995) (finding that in using the conventional meaning of contribution, the plaintiffs who were by their own admission liable parties, were in effect asserting claims that must be classified as an action for contribution); *New Castle County*, 111 F.3d at 1122 (noting that every circuit that had addressed the issue had found similarly and finding § 113 "provide[d] potentially responsible persons with the appropriate vehicle for ... recovery"); *Colorado & Eastern Railroad*, 50 F.3d at 1536 (finding that any claim that would reapportion costs between PRPs "is the quintessential claim for contribution" and "[w]hatever label [the PRP] may wish to use, its claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make," and thus is controlled by § 113(f)); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998)

(finding that PRP who had voluntarily cleaned up a site was still restricted to seeking contribution); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) ("To bring a cost recovery action based solely on § 107(a), Redwing would have to be an innocent party."); *Akzo Coatings Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994) (precluding PRP from seeking cost recovery claim and noting that action in which party liable for some of the site contamination sought costs from other liable parties was the "quintessential claim for contribution"); *cf. Rumpke of Indiana, Inc., v. Cummins Engine Company, Inc.*, 107 F.3d 1235 (7th Cir.1997) (allowing cost recovery claim by "innocent" PRP who had not contributed to site contamination). While the Fifth and Eighth Circuits have not directly confronted the issue, they too have indicated that PRPs are limited to actions for contribution. *See Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 936 (8th Cir. 1995); *Amoco Oil v. Borden, Inc.*, 889 F.2d at 672. Accordingly, we address our own reading of the statute with these leading circuit decisions as persuasive background.

### C.

■ Before this court, the plaintiffs argue that the plain language of § 107, which authorizes the recovery of "necessary costs by *any other person*," 42 U.S.C. § 9607(a)(4)(B) (underline added), allows joint and several cost recovery actions by PRPs because it does not limit persons to "innocent" persons, but simply any other persons regardless of culpability. Plaintiffs argue that the section unequivocally grants standing to any persons who have incurred necessary response costs, and that nothing in CERCLA indicates that only innocent persons fall within the definition of "any other persons." Thus, the plaintiffs assert that the test for determining whether a party may seek joint and several

---

9. Who bears the burden for hazardous waste cleanup costs is an issue of great consequence. Costs for such cleanups have nearly tripled since CERCLA's inception in 1980. During the 1980s the average cost for a hazardous waste cleanup was between six to ten million dollars. *See* Thomas C.L. Roberts, *Allocation of Liability Under CERCLA: A "Carrot and Stick" Formula*, 14 Ecology L.Q. 601, 604 (1987). Figures now place the average cost of cleanups anywhere between twenty-five to thirty million dollars per site. *See* Jeffries G. Miller & Craig N. Johnston, The Law of Hazardous Waste Disposal and Remediation 9 (1996); Susan R. Poulter, *Cleanup & Restoration: Who Should Pay?*, 18 J. Land Resources & Envtl. L. 77, 78 (1998).

cost recovery under CERCLA does not rest on whether a party is liable or potentially liable, but rather depends only on whether a party has incurred necessary costs of response.

The government responds by asserting that CERCLA does not provide two separate and distinct causes of actions, but that the two sections, § 107(a) and § 113(f) work in conjunction. It argues that an action for contribution must be brought pursuant to § 107(a), but is governed by § 113(f). In other words, the government asserts that § 113(f) applies to claims asserted under § 107(a). The government points out that § 107 provides the basis and the elements of a claim for recovery of response costs and lists the parties who are liable, as well as the defenses to liability. Therefore, one must necessarily look to § 107 in contribution actions involving § 113(f). Under such a reading, if § 113(f) is incorporated under § 107, then a § 113(f) action *is* an action to recover the necessary costs of response by any other person, as referred to in § 107. The action only happens to be an action for contribution. We agree.

Section 107(a) clearly establishes the right of parties to seek "necessary costs of responses." It does not specify whether these costs will arise from joint and several liability or sound in contribution. As noted above, before the adoption of § 113(f), courts found that § 107(a) created an implied right of action for both contribution and joint and several recovery. Additionally, as the government asserts, parties seeking contribution under § 113(f) must look to § 107 to establish the basis and elements of the liability of the defendants, as well as any defenses to that liability. According to the plain language of § 113(f) which provides that "any person may seek contribution from any other person who is liable or potentially liable under section [107(a) ]," it is § 107(a) that establishes the cause of action for contribution. While a party seeking contribution under § 113(f) may not recover under joint and several liability, it is clear that under a plain reading of the statute, the party is seeking to recover its "necessary costs of response" as referred to in § 107(a).

Thus, the plaintiffs are correct—to a point. Any party may seek response costs regardless of its status as a liable or potentially liable party. Whether that party may seek joint and several cost recovery, or is limited to an action for contribution governed by § 113(f), however, depends on the nature of the cause of action pleaded.

Cost recovery actions by parties not responsible for site contaminations are joint and several cost recovery actions governed exclusively by § 107(a). Claims by PRPs, however, seeking costs from other PRPs are necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f). To explain our reasoning, we must define contribution in both the common law and under CERCLA.

Black's Law Dictionary defines contribution as the "[r]ight of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear." BLACK'S LAW DICTIONARY 328 (6th ed. 1990). The Restatement of Torts (Second) § 886A provides that: "(1) ... when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, *even though judgment has not been recovered against all or any of them.*" RESTATEMENT (SECOND) TORTS § 886A (underline added). The comment to subsection (1) provides:

The rule stated in Subsection (1) applies to "joint torfeasors," in the sense of two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendant ... The rule stated applies to make a torfeasor liable for contribution, subject to the limitations set forth in the later subsections, although no action has been brought against him by the injured plaintiff. It applies in favor of a tortfeasor who has paid more than his equitable share of the common liability in settlement, without any judgment or even suit against him.

*Id.* at § 886A cmt. b. Finally, the American Jurisprudence provides:

The primary requisites of the equitable right to contribution and the obligation to contribute, and of the corresponding right and obligation at law, are (1) a situation wherein the parties are liable because of circumstances existing equally as to both under some common obligation or burden, and (2) compulsory payment or other discharge, by the party seeking contribution of more than his fair share of the common obligation or burden.

18 AM.JUR.2D CONTRIBUTION § 9 (footnotes omitted).

Based on the above definitions, and looking to the claim pleaded by the plaintiffs, it is apparent that their claim is by necessity a claim for contribution. The plaintiffs are all PRPs, who have never asserted their innocence or challenged their liability under § 107(a). Pursuant to a § 106 order they had a legal obligation to conduct the site cleanup, which they fulfilled and in so doing, paid more than their fair share of the obligation. Plaintiffs now seek costs for this cleanup from other PRPs who also contributed to the site contamination and are also potentially liable under § 107(a) but who did not contribute their pro rata share. As stated by other circuit courts, this is the "quintessential" action for contribution. *See Colorado & Eastern Railroad,* 50 F.3d at 1536; *Akzo,* 30 F.3d at 764. It is thus governed by the procedures set forth in § 113(f) for such actions.

In an attempt to distinguish their case from the typical case of contribution, however, the plaintiffs assert that they have neither settled with the EPA nor been adjudged liable under § 107(a). They contend that the majority of circuit decisions limiting PRPs to actions for contribution have involved parties who had either settled with the EPA or been adjudged liable under § 107(a). Moreover, they contend that contribution exists only when a party has either been "adjudged" liable or settled a common liability.

Under the common law, however, there was no requirement that a party be "adjudged" liable before seeking contribution, and none of the definitions set forth above referred to any such requirement. It was enough that a plaintiff act under some compulsion or legal obligation to an injured party when he or she discharged the payment.[10] *See generally* 18 AM.JUR.2D CONTRIBUTION § 15 ("To entitle one co-obligor to contribution from the others, it is the general rule that the payment made by him must have been compulsory in the sense that he must have been under legal obligation to pay."); 18 AM.JUR.2D CONTRIBUTION § 10 ("[R]equirement [of liability] is satisfied ... when parties are under common burden, obligation, or liability, regardless of whether such common burden is one assumed by the parties through contract, one devolving upon them as co-owners of property, one imposed by statute, or one which the law imposes equally on the parties in certain classes of cases as a result of their concurring acts or because of a community risk.") (footnotes omitted); Michael V. Hernandez, *Cost Recovery or Contribution?: Resolving the Controversy over CERCLA Claims Brought by Potentially Responsible Parties,* 21 HARV. ENV. L.REV. 83, 98–103 (1997) (detailing both common law of joint and several liability and contribution and its relation to CERCLA); *see also Huggins v. Graves,* 337 F.2d 486, 489 (6th Cir.1964) (holding that there was no requirement of a judgment against a party before it seeks contribution); *Zontelli Brothers v. Northern Pacific Railway Co.,* 263 F.2d 194, 199 (8th Cir.1959) (noting that payment made by party seeking contribution must be compulsory but that there was no requirement that the claim be reduced to judgment before party paying obligation was entitled to contribution); *Chamberlain v. McCleary,* 217 F.Supp. 591, 592 (E.D.Tenn. 1963) (no requirement of judgment); *McLochlin v. Miller,* 139 Ind.App. 443, 217 N.E.2d 50, 53 (1966) (noting that although payment must be under compulsion to entitle

---

10. Under the technical definition of contribution at common law, a party who voluntarily discharged a debt to another could not seek contribution. *See* 18 AM.JUR.2D CONTRIBUTION § 15. This case does not involve a PRP who initiated cleanup voluntarily without any governmental prod-

ding, and we express no opinion with regard to such a party's right to seek joint and several cost recovery. We also do not rule on whether an "innocent" PRP who has not contributed to site contamination may nevertheless seek joint and several cost recovery.

one to contribution, claimant need not wait until suit is brought). A § 106 administrative order requiring cleanup in the face of penalties or fines clearly satisfies such a requirement.

Additionally, § 113(f) codifies this aspect of the common law by providing that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of any civil action under section 9606 of this title or section 9607 of this title." 42 U.S.C. § 9613(f)(1). Contribution, then, under both the common law and § 113(f) applies in claims such as these where a potentially responsible party has been compelled to pay for response costs for which others are also liable, and who seeks reimbursement for such costs. Indeed, it is disingenuous at best for the plaintiffs, who have not challenged their status as PRPs, to claim their action is not one for contribution simply because the EPA was not forced to take them to court. *See Sun Company, Inc., v. Browning–Ferris, Inc.*, 124 F.3d 1187, 1190 (10th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1045, 140 L.Ed.2d 110 (1998) ("The fact that Plaintiffs incurred cleanup costs by complying with a unilateral administrative order, without forcing the government to take them to court, does not change their status as jointly and severally liable parties."). At no point have the plaintiffs ever attempted to imply that they are "innocent" parties not responsible for a portion of the site contamination, and not liable under § 107. In fact, the plaintiffs have in all respects conceded their liability under CERCLA by failing to assert their innocence and recognizing that if this court were to permit them to seek joint and several cost recovery, the defendants would be able to seek contribution against them. *See Pinal Creek,* 118 F.3d at 1305 n. 8.

Moreover, we believe our reading of the statute, finding that § 113(f) and § 107 work together, is supported by its legislative history.[11] The legislative history to SARA emphasized that the provision "clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties." S.Rep. No. 99–11, at 44 (1985). *See also* H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 3 at 18–19 (1985) (CERCLA § 113(f) "clarifies the availability of judicial review regarding contribution claims and settlements"); S.Rep. No. 11, 99th Cong., 1st Sess. 43 (1985) (the bill "clarifies and confirms existing law" by adding a contribution provision); 131 Cong. Rec. 24450 (1985) (statement of Sen. Stafford, a SARA sponsor) ("[A]mendment of the statute would remove any doubt as to the right of contribution ... despite several recent district court cases correctly confirming that we intended the law to confer such a right"). Thus, the right of contribution has always been established pursuant to § 107, yet only after the codification of § 113(f) was the right made explicit.

Our reading of the statute limiting the PRP plaintiffs to contribution, gives meaning to the language in § 107(a) referring to any person, as well as the explicit contribution provisions found in § 113(f). Whether the plaintiffs themselves characterize their action as one for cost recovery or contribution, it is clear to us that they are seeking contribution, and are thus governed by § 113(f).

The Ninth Circuit, in *Pinal Creek Group v. Newmont Mining Corp.*, adopted similar reasoning in finding that a PRP's action seeking reimbursement for response costs was a contribution claim governed by § 113(f). The case involved a group of three mining companies (the Pinal Creek Group) who had voluntarily engaged in the cleanup of a hazardous

11. Our reading of the statute is further supported by our recognition that any other reading would render § 113(f)'s contribution protection provision meaningless. As noted earlier, § 113(f)(2) provides that parties who settle with the United States or a State may not be sued for contribution. *See* 42 U.S.C. § 9613(f)(2). While the issue is not before us today, were we to allow PRPs to seek joint and several cost recovery under § 107(a), they could do so against parties who had settled, and against whom they were precluded from seeking contribution. Thus, in effect, while precluded from apportioning liability against settling PRPs, plaintiffs could seek to recover their joint and several response costs under § 107(a)'s joint and several liability scheme. Obviously such a result would be absurd, and Congress cannot have intended PRPs to seek joint and several liability or it would have included a provision prohibiting joint and several cost recovery against settling PRPs as well as contribution.

waste site located in Arizona. *Pinal Creek*, 118 F.3d at 1300. After conducting the cleanup, the Pinal Creek Group, which admitted that it was partly responsible for a portion of the cleanup costs, asserted a joint and several liability claim against the defendants for the full amount of their cleanup costs. *Id.* The Ninth Circuit reasoned that §§ 107 and 113(f) must be read in conjunction to provide and regulate a PRP's right to claim contribution from other PRPs. *Id.* at 1301–02. The court found that "while § 107 created the right of contribution, the 'machinery' of § 113 governs and regulates such actions, providing the details and explicit recognition that were missing from the text of § 107" prior to its enactment. *Id.* at 1302. Thus, the court concluded, that §§ 107 and 113(f) "work together—the first section creating the claim for contribution between PRPs, and the second qualifying the nature of that claim." *Id.; see also New Castle County*, 111 F.3d at 1122; *Boeing Co. v. Cascade Corp.*, 920 F.Supp. 1121, 1131–32 (D.Or. 1996); *United States v. ASARCO, Inc.*, 814 F.Supp. 951, 956 (D.Colo.1993).

The Tenth Circuit's decision in *Sun Company, Inc. v. Browning–Ferris, Inc.*, also supports our reading of the statute. *Sun Company* involved a factual situation identical to our own—the plaintiffs were PRPs who had been ordered to conduct a site cleanup pursuant to a § 106 administrative order, and who then sought cost recovery from other PRPs under CERCLA § 107(a). The Tenth Circuit had previously determined in *Colorado & Eastern Railroad* that PRPs who incurred cleanup costs pursuant to a civil action under §§ 106 or 107 were limited to bringing actions for contribution. Sun Company attempted to distinguish its case by asserting that it had incurred cleanup costs by complying with a unilateral administrative order. *Sun Company*, 124 F.3d at 1190. The court found that this did not change their status as PRPs and thus their claim was still one for contribution. *Id.* In so doing, the court noted that it had previously made clear that "§ 113(f) did not create a new cause of action, nor did it create new liabilities.... 'It is no more than a mechanism for apportioning [CERCLA]-defined costs.'" *Id.* at 1191 (quoting *Bancamerica*

*Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 100 F.3d 792, 800 (10th Cir.1996) (footnotes omitted; parenthetical in original)). The court reiterated that:

> because § 113(f) incorporates the liability provision of § 107, ... a § 113(f) action for contribution *is* an action under § 107.... While a § 113(f) contribution action is not a "cost recovery" action under § 107 as that action has been defined, because it does not impose strict, joint and several liability on the defendant PRPs, it *is* an action for recovery of *the costs referred* to in § 107. Under CERCLA's statutory scheme, therefore, a PRP's contribution action seeks to recover costs referred to in § 107 from PRPs whose liability is defined by § 107, but is governed by the equitable apportionment principles established in § 113(f). *Id.* (citations omitted; emphasis in original).

While other courts have not expressly adopted such reasoning, by looking to the cause of action pleaded to determine whether § 113(f) applies, they have in effect reached the same conclusion: that any person may seek to recover costs under § 107(a), but that it is the nature of the action which determines whether the action will be governed exclusively by § 107(a) or by § 113(f) as well. *See, e.g., United Technologies*, 33 F.3d at 101; *Colorado & Eastern Railroad*, 50 F.3d at 1536; *Akzo Coatings Inc.*, 30 F.3d at 764.

We note that contrary to the plaintiffs' assertions, our reading of the statute to preclude them from seeking joint and several cost recovery will not impede the goals of CERCLA. As recognized by this court, CERCLA was enacted "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on the PRPs." *United States v. Akzo Coatings of America*, 949 F.2d 1409, 1417 (6th Cir.1991). The plaintiffs assert that allowing PRPs to assert claims for joint and several liability under § 107(a) would ensure that private parties who, like plaintiffs, come forward and initiate a cleanup receive some benefit for their efforts and the costs that they incur. In addition, the plaintiffs assert that such a result creates incentives for cleaning up contaminated sites because those

who come forward quickly gain the benefit of a cost recovery action, which advances the policy of encouraging settlement.

Initially, we are somewhat at a loss as to why the plaintiffs believe that they and parties like them deserve to receive any benefits for their efforts. Contrary to the rosy picture painted by the plaintiffs, they did not come forward in an effort to initiate a site cleanup, but were forced to do so under the compulsion of a § 106(a) order facing stiff penalties and fines. While there may be some truth to their assertions that allowing PRPs to seek cost recovery will provide an incentive to initiate voluntary cleanups, such a situation does not apply to them. Indeed, if the incentive theory really worked, plaintiffs who believed that they were entitled to joint and several cost recovery all along would not have waited for the EPA to adopt a § 106 administrative order. Furthermore, we expressly leave open the question of whether volunteers, or parties who are truly innocent, may seek joint and several cost recovery, thereby encouraging voluntary cleanups. In this case, no purpose would be served by adopting a blanket rule allowing joint and several cost recovery by rewarding such plaintiffs who did not settle with the government and did not initiate a site cleanup on their own.

Moreover, § 113(f) has its own incentives for quick cleanup and cooperation with the government. Section 113(f) expressly authorizes the court to allocate response costs between the parties using any equitable factors the court deems appropriate. *See* 42 U.S.C. § 9613(f)(1). One of the equitable factors a court may consider is the degree of cooperation of the parties with the government. *See Amoco Oil,* 889 F.2d at 672–73. Thus, § 113(f) provides a similar incentive for parties to respond quickly to cleanup efforts.

Additionally, rather than allowing parties who are themselves partly responsible for site contamination to initially recoup their entire response costs regardless of their cul-

pability, § 113's equitable allocation provision allows the court to allocate costs equitably among PRPs considering the so-called "Gore Factors," which are: (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the hazardous waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with the Federal, State or local officials to prevent any harm to the public health or environment. *Colorado & Eastern Railroad,* 50 F.3d at 1536 n. 5. Under such a framework, plaintiffs need not worry about getting stuck with so called "orphan shares." [12]

Such equitable allocation would ultimately result from the plaintiffs' scenario. They tout a "two step framework" in which PRPs who initiate cleanup may seek joint and several recovery from other PRPs who then may turn around and file contribution claims against the original PRPs. Thus, even under the plaintiffs' framework, contribution ultimately becomes the necessary result. They seek, however, to prolong this result through unnecessary litigation, time and expense.

In concluding, we dispose of the plaintiffs' final arguments in support of their reading of the statute. They assert that the statute of limitations in § 113(g) identifies four events which fix the time when a claimant's contribution action accrues: (1) a judgment in a cost recovery action; (2) an administrative de minimis settlement; (3) an administrative cost recovery settlement; or (4) a judicially approve settlement for response costs or

---

12. Orphan shares are response costs attributable to insolvent or defunct PRPs at a site, which are unable to be recovered. *See Sun Company,* 124 F.3d at 1193 n. 4. Parties held jointly and severally liable for a site cleanup initially shoulder the burden of orphan shares. Yet when the parties seeks contribution from other PRPs, the district court, pursuant to its § 113(f) authority may apportion the amount of the orphan shares among the parties. *Id.* at 1193.

damages.[13] The plaintiffs argue that none of these triggering events involve cases such as this, where a party incurs response costs after a § 106 order. They posit that the statute of limitations for § 107 does apply, which sets the triggering date as the completion of a removal or initiation of a remediation action. Thus, the plaintiffs assert that precluding PRPs from seeking cost recovery would prevent them from having a statute of limitations and reinforces the conclusion that they are correctly seeking cost recovery. Although we have no statute of limitations issue before us today, the Tenth Circuit, in *Sun Company*, directly confronted the issue and found that because a § 113(f) action was an action for the recovery of response costs referred to in § 107(a), it was covered by the language of § 113(g) which provides that "[a]n initial action for recovery of the costs referred to in section 9607 of this title must be commenced ... for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action ..." *Sun Company*, 124 F.3d at 1192 (citing 42 U.S.C. § 9613(g)(2)). The court found that the present civil litigation suit in the case, although an action for contribution, was the " 'initial action' for recovery of such costs." *Id.* While we need not adopt the Tenth Circuit's reasoning because a statute of limitations issue is not before our court today, we note that our resolution of this case in finding that § 113 is not completely independent of § 107 would render a similar result. *See also Pinal Creek*, 118 F.3d at 1305 n. 7 (dismissing any statute of limitations argument that is based on the incorrect premise that a contribution action is not brought under § 107 and therefore would not have a statute of limitations triggering date).

Finally, we note that our decision in *Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524 (6th Cir.1993), does not require an opposite holding.[14] In *Velsicol*, the plaintiff PRP performed cleanup activities pursuant to an agreement with the EPA, and then brought cost recovery and contribution claims against other PRPs. *Velsicol*, 9 F.3d at 526. The district court had dismissed the claims based on laches and the statute of limitations. *Id.* at 527. The specific issue before this court was whether the statute of limitations period added for § 107(a) claims could be applied retroactively and whether the equitable defense of laches was available to a party sued under § 107. This court ruled that the statute of limitations could not be applied retroactively, and thus the district court had erred by dismissing the cost recovery claim due to the new statute of limitations. *Id.* at 529–30. The court also found that based on the plain language of § 107, laches was not an available defense to a § 107 cost recovery claim. *Id.* Therefore, the court reinstated the cost recovery claim brought by Velsicol, which was itself a PRP. *Id.* The court, however, was not confronted with, nor did it address the issue presently before this court. Moreover, the case involved plaintiffs who apparently had initially joined forces with the EPA and state and local government authorities to plan the site cleanup without governmental prodding. *Id.* at 529. The EPA was not forced to bring any civil action against the plaintiffs and did not have to issue an administrative order to compel the plaintiffs to initiate cleanup. Thus, the case more closely parallels the question we do not address here, whether a plaintiff PRP who voluntari-

---

**13.** 42 U.S.C. § 9613(g)(3) provides in pertinent part that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after ... the date of judgment in any action under this chapter for recovery of such costs or ... the date of administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages." (parentheticals in original).

**14.** Nor do we find the Supreme Court's decision in *Key Tronic Corp. v. United States*, 511 U.S.

809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), where the Court held that attorney's fees were not necessary costs of response covered under § 107(a), but permitted private litigants to maintain cost recovery actions under the section, preclusive here. The Supreme Court in *Key Tronic* was not directly confronted with the issue of whether PRPs may seek cost recovery. Further, the Court's statement that the "statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107," 511 U.S. at 816, 114 S.Ct. 1960, actually supports our reading of the statute.

ly initiates a cleanup may nevertheless bring a joint and several cost recovery action.

### D.

We find that parties who themselves are PRPs, potentially liable under CERCLA and compelled to initiate a hazardous waste site cleanup, may not bring an action for joint and several cost recovery, but are limited to actions for contribution governed by the mechanisms set forth in CERCLA § 113(f). Accordingly, we **AFFIRM** the judgment of the district court.