General Electric v. American Annuity  CV-00-069-B   03/30/01  P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


General Electric Company

   v.                                    Civil No. 00-069-B
                                            Opinion NO. 2001DNH068.P
American Annuity Group, Inc.,
AVX Corporation, and
Windsor-Embassy Corporation



MEMORANDUM AND ORDER


General Electric Company brings this action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, as amended, seeking contribution from the defendants for certain past and future response costs. Defendants argue in a motion to dismiss that General Electric's claims for past costs are barred by 42 U.S.C. § 9613(g)(3), CERCLA's three-year statute of limitations for contribution actions. General Electric responds by contending that § 9613(g)(3) does not bar its claims because none of the subsection's triggering events have occurred. I reject both arguments and instead conclude that General Electric's claims are

subject to 42 U.S.C. § 9613(g)(2), CERCLA's general statute of limitations for actions to recover response costs. Because I cannot determine on the present record whether General Electric's claims are barred by § 9613(g)(2), I deny defendants' motion without prejudice.

## I. BACKGROUND[1]

The United States Environmental Protection Agency ("EPA") added the Fletcher's Paint Works Site to the National Priorities List of Superfund Sites in 1989. It executed removal actions at the site in 1988, 1991, and 1993. In 1991, the EPA filed suit to recover its removal costs from General Electric.[2] The suit alleged that General Electric was liable because it had generated some of the hazardous wastes that had been found at the site. General Electric ultimately settled with the EPA and signed a consent decree that required it to reimburse the EPA for its removal costs.

---

[1] Unless otherwise noted, I take the background facts from General Electric's complaint, (Doc. No. 1).

[2] The EPA also named the Windsor-Embassy Corporation as a defendant in the action. Windsor failed to respond to the complaint, and the court entered a default judgment against it.

In 1995, the EPA issued a Unilateral Administrative Order ("UAO") to General Electric pursuant to 42 U.S.C. § 9606.[3] The UAO required General Electric to remove contaminated soil from several residential properties adjacent to the site and engage in other work. General Electric incurred substantial costs in complying with the UAO.

In 1996, General Electric voluntarily removed contaminated soil from other properties adjacent to the site. It also incurred additional costs while investigating the site and identifying other potentially responsible parties ("PRPs").[4]

---

[3] Section 9606 authorizes the EPA to issue a UAO when it determines that an "imminent and substantial endangerment to the public health or welfare or environment" exists because of an "actual or threatened release of a hazardous substance from a facility." 42 U.S.C. § 9606(a). The scope of a § 9606 UAO may be very broad, as the EPA "may secure such relief as may be necessary to abate such danger or threat." Id. In addition, the consequences for failing to comply with a § 9606 UAO are severe, as a non-complying party faces penalties of up to $25,000 per day. See § 9606(b)(1).

[4] PRPs may be liable for response costs incurred by governmental entities and certain private parties. See 42 U.S.C. §§ 9607(a)(4), 9613(f)(1). There are four categories of PRPs: (1) the current owner or operator of a hazardous waste facility; (2) any past owner or operator of a hazardous waste facility that owned or operated the facility during a time when hazardous substances were disposed there; (3) any person who arranged for disposal or treatment of hazardous substances at the hazardous waste facility (usually generators); and (4) any person who transported hazardous substances to a hazardous waste facility

-3-

General Electric commenced this contribution action against the American Annuity Group, Inc., the AVX Corporation, and the Windsor-Embassy Corporation on February 16, 2000. The suit alleges that Windsor is liable for contribution as the current owner of the site, American Annuity Group is liable as the successor to the corporation that owned the site when hazardous wastes were deposited there, and AVX is liable as the successor to a corporation that generated some of the hazardous materials that were found at the site. General Electric seeks contribution for both costs that it incurred in complying with the UAO and costs that it voluntarily incurred in the 1996 cleanup.[5] It also seeks a determination that the defendants are liable for their share of any cleanup costs that General Electric incurs in the future at the site.

_____

from which there is a release or a threatened release which causes a party to incur response costs. See § 9607(a)(1)-(4). A PRP may prove that it is not liable under CERCLA by establishing that the release of a hazardous substance was the result of: (1) an act of God; (2) an act of war; or (3) the actions of a third party over whom the PRP had no control. See § 9607(b).

[5] The complaint also includes a contribution claim for costs that General Electric incurred pursuant to the consent decree. General Electric concedes, however, that this claim is barred by § 9613(g)(3).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires a court to accept the complaint's well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. See Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997); Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). I may dismiss a complaint, when viewed in this manner, only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) (internal citation omitted).

The threshold for stating a claim under the federal rules "may be low, but it is real." Id. Although I must construe all well-pleaded facts in the plaintiff's favor, I need not accept a plaintiff's "unsupported conclusions or interpretations of law." Wash. Legal Found., 993 F.2d at 971.

I apply this standard in resolving defendants' motion to dismiss.

## III.  **DISCUSSION**

Section 9607 of CERCLA imposes liability on PRPs for response costs[6] incurred by the United States, a state, an Indian tribe, or any other person.  See 42 U.S.C. § 9607.  While § 9607 did not initially authorize a PRP to obtain contribution from other PRPs, courts interpreting CERCLA have routinely recognized that PRPs have an implied right to contribution based on § 9607.  See Key Tronic Corp. v. United States, 511 U.S. 809, 816 n.7 (1994) (collecting cases).

Congress amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, § 101 et seq., 100 Stat. 1613 (1986), to grant PRPs an express right to contribution in certain circumstances.  Section 9613(f)(1) now provides that a PRP may maintain an action for contribution "during or following any civil action under section 9606 of this title or under section 9607(a) of this title."  42 U.S.C. § 9613(f)(1).  Section 9613(f)(1) does not entirely displace the pre-existing implied private right to contribution derived from § 9607, however, as the subsection also states, "[n]othing in this

_____

[6]  Response costs include those costs incurred during removal and/or remedial actions.  See 42 U.S.C. § 9601(25); infra notes 10-11 (defining removal and remedial actions).

subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action for contribution under section 9606 of this title or section 9607 of this title." Id. The Supreme Court thus has explained that CERCLA "now expressly authorizes a cause of action for contribution in § 9613 and impliedly authorizes a similar and somewhat overlapping remedy in § 9607." Key Tronic Corp., 511 U.S. at 816.

General Electric bases its contribution claims on the implied right to contribution derived from § 9607.[7] Two different statutes of limitations potentially cover such claims. Subsection 9613(g)(3) expressly applies to contribution claims and establishes a three-year limitation period that is triggered by (1) a judgment in a cost recovery action; (2) an administrative settlement; or (3) a judicially approved

---

[7] General Electric also asserts contribution claims pursuant to § 9613(g)(1). Because it has not brought its claims "during or following any civil action under Section 9606 . . . or under Section 9607(a)," General Electric may not seek contribution pursuant to § 9613(f)(1). Therefore, it may only base its contribution claims on the implied right to contribution drived from § 9607.

-7-

settlement.[8]  See 42 U.S.C. § 9613(g)(3).  Subsection 9613(g)(2)

covers "action[s] for the recovery of costs referred to in

section 9607."[9]  42 U.S.C. § 9613(g)(2).  This subsection

provides different limitation periods for suits to recover

removal action costs[10] and suits to recover remedial action

---

[8]  Subsection 9613(g)(3) provides:

> No action for contribution for any response
> costs or damages may be commenced more than 3
> years after: (A) the date of judgment in any
> action under this chapter for recovery of
> such costs or damages, or (B) the date of an
> administrative order under section 9622(g) of
> this title (relating to de minimis
> settlements) or 9622(h) of this title
> (relating to cost recovery settlements) or
> entry of a judicially approved settlement
> with respect to such costs or damages.

[9]  Subsection 9613(g)(2) provides in pertinent part:

> [a]n initial action for recovery of the costs
> referred to in section 9607 of this title
> must be commenced: (A) for a removal action,
> within 3 years after completion of the
> removal action...; and (B) for a remedial
> action, within 6 years after initiation of
> physical on-site construction of the remedial
> action....

[10]  The term removal action "means [those actions taken to]
cleanup or remov[e] released hazardous substances from the
environment [or to dispose of the removed material] ... [and]
such actions as may be necessary to monitor, assess, and evaluate
the release or threat of release of hazardous substances."  42
U.S.C. § 9601(23).

-8-

costs.[11]  The limitation period for suits to recover removal costs is three years and is triggered by the completion of the removal action.  See § 9613(g)(2)(A).  The limitation period for suits to recover remedial costs is six years and is triggered by the "initiation of physical on-site construction" of the remedial action.[12]  § 9613(g)(2)(B).

General Electric incurred its response costs either pursuant to the UAO or on its own initiative.  Because its claims did not arise from a judgment, an administrative settlement, or a judicially approved settlement, they are not expressly limited by § 9613(g)(3).  Nor is it evident that its claims are subject to § 9613(g)(2) because that provision does not reference contribution claims.  Accordingly, I must interpret CERCLA to determine which,

_____

[11]  The term remedial action "means those actions consistent with [a] permanent remedy taken, instead of or in addition to removal actions, ... to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to [the] public health ... or the environment."  42 U.S.C. § 9601(24).

[12]  Removal costs also may be included in a suit to recover remedial costs if the remedial action is commenced within three years after the completion of the removal action.  See 42 U.S.C. § 9613(g)(2)(B).  A subsequent cost recovery claim for either removal or remedial costs may be maintained at any time up to three years afer the completion of all response actions at the site.  See id.  These limitations are inapplicable in the present case.

if either, of these two provisions limits General Electric's right to contribution.

The only two circuit courts that have directly addressed this issue have concluded that CERCLA contribution claims are governed by § 9613(g)(2) unless they are expressly limited by § 9613(g)(3).  See Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187, 1193 (10th Cir. 1997);  Geraghty & Miller, Inc. v. Conoco Inc., 234 F.3d 917, 925 (5th Cir. 2000); see also Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 355 (6th Cir. 1998) (citing Sun Co., 124 F.3d 1187, with approval).  Both parties argue, however, that courts in this circuit cannot follow these precedents because the First Circuit's opinion in United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96 (1st Cir. 1994), requires a different result.

While the parties agree that § 9613(g)(2) does not limit General Electric's claims, they unsurprisingly take differing positions concerning whether its claims are barred by § 9613(g)(3).  General Electric argues that § 9613(g)(3) is the sole statute of limitations for CERCLA contribution claims.  Citing precedents from other district courts, see United States v. Scott's Liquid Gold, Inc., 934 F. Supp. 362, 365 (D. Colo.

1996); <u>Gould Inc. v. A & M Battery & Tire Serv.</u>, 901 F. Supp. 906, 914-15 (M.D. Pa. 1995), <u>vacated by</u> 232 F.3d 162 (3d Cir. 2000); <u>Reichhold Chems., Inc. v. Textron, Inc.</u>, 888 F. Supp. 1116, 1125 (N.D. Fla. 1995); <u>Ekotek Site PRP Comm. v. Self</u>, 881 F. Supp. 1516, 1522-24 (D. Utah 1995), it then asserts that its claims are not time-barred because none of the triggering events specified in § 9613(g)(3) have occurred.

Defendants concede that § 9613(g)(3) does not expressly limit General Electric's claims. They argue, however, that I must "borrow" § 9613(g)(3)'s three-year limitation period and determine that it is triggered, with respect to voluntary costs, when the PRP incurs more than its fair share of such costs, and with respect to UAO costs, when a PRP signals its intention to comply with the UAO. Using this approach, defendants argue that General Electric's claims are time-barred.

As I explain in greater detail in the sections that follow, I reject both parties' arguments and instead follow the Tenth and Fifth Circuits in concluding that § 9613(g)(2) supplies the limitation periods for contribution claims that are not expressly limited by § 9613(g)(3). I reach this result for several reasons. First, the parties have misconstrued <u>United</u>

Technologies.  It does not hold that § 9613(g)(2) is inapplicable to contribution claims.  Second, the parties overlook the fact that § 9613(g)(2) and § 9613(g)(3) reasonably can be read together to supply limitation periods for all CERCLA contribution and cost recovery claims.  Third, General Electric's alternative interpretation, while linguistically plausible, produces absurd results that can be avoided if § 9613(g)(2) is construed to cover its contribution claims.  Finally, defendants' interpretation depends upon an incorrect understanding of Supreme Court precedents that explain when a court may borrow a federal statute of limitation to supply a limitation period for an implied right of action.

**A.**

In United Technologies, the plaintiff was attempting to recover costs that it had incurred pursuant to a consent decree. See 33 F.3d at 97.  Because the plaintiff was itself a PRP, the court determined that it could not maintain a private cost recovery claim pursuant to § 9607.  See id. at 101, 103. Instead, the court characterized the plaintiff's claim as a contribution claim and determined that it was barred by §

9613(g)(3).  See id.  In reaching this conclusion the court described the relationship between §§ 9613(g)(3) and 9613(g)(2) by stating that:

> [T]he two statutes of limitations complement each other and together exhaust the types of actions that might be brought to recoup response costs.  [T]he shorter prescriptive period, contained in 42 U.S.C. § 9613(g)(3), governs actions brought by liable parties during or following a civil action under 42 U.S.C. §§ 9606-9607(a), while the longer statute of limitations, contained in 42 U.S.C. § 9613(g)(2), addresses actions brought by innocent parties that have undertaken cleanups (say, the federal, state or local governments).
>
> This reading fits especially well with the language of 42 U.S.C. § 9613(g)(2), which concerns actions for the "recovery of the costs."  That phrase, reiterative of the subsection heading "Actions for recovery of costs," suggests full recovery; and it is sensible to assume that Congress intended only innocent parties-- not parties who were themselves liable-- to be permitted to recoup the whole of their expenditures."

Id. at 99-100.  The parties rely on this language to support their argument that § 9613(g)(2) does not cover contribution claims.

The court's holding in United Technologies is more limited than the parties suggest.  Because the claim at issue in that

-13-

case arose from a consent decree, it was expressly subject to the three-year limitation period specified in 42 U.S.C. § 9613(g)(3). See United Techs. Corp., 33 F.3d at 103. Thus, once the court determined that a PRP could not maintain a private cost recovery claim against other PRPs, the court understandably concluded that the plaintiff's claim was barred by § 9613(g)(3). See id. The court did not have to determine whether a claim that is not subject to any of the triggering events specified in § 9613(g)(3) may nevertheless be limited by § 9613(g)(2). Moreover, the court expressly left open the possibility that an implied private right of action for contribution may be subject to § 9613(g)(2) if it is not expressly limited by § 9613(g)(3). See id. at 99 n.8. The court observed in this regard that:

> If, indeed, the law allows such an implied right of action for contribution to be maintained-- a matter on which we take no view-- it is unclear to us whether such a cause of action would be subject to the three-year [§ 9613(g)(3)] or the six-year [§ 9613(g)(2)] prescriptive period. Because this appeal does not pose that question, we leave it for another day.

Id. In view of the fact that United Technologies leaves open the possibility that § 9613(g)(2) may cover contribution claims that

-14-

are not limited by § 9613(g)(3), I do not construe the opinion to foreclose such a result.

**B.**

Because the parties misconstrued United Technologies, they also failed to consider whether §§ 9613(g)(2) and 9613(g)(3) reasonably can be read together to supply the limitation periods for all CERCLA contribution and cost recovery claims. See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (invoking the rule that a court should consider the text of a statute as a whole). I now undertake that effort.

Section 9613(g)(3) plainly serves as the statute of limitations for contribution claims in which any of the triggering events specified in the subsection have occurred. Its text does not, however, preclude the possibility that another section of CERCLA may supply the limitation periods for those contribution claims that are not limited by § 9613(g)(3). Thus, I must look to § 9613(g)(2) to determine whether it can be read to supply the limitation periods for contribution claims that are not expressly limited by § 9613(g)(3).

-15-

Subsection 9613(g)(2) reasonably can be construed to fill the gaps left by § 9613(g)(3). It applies broadly to any "initial action for recovery of the costs referred to in section 9607 of this title . . . ." 42 U.S.C. § 9613(g)(2). A contribution claim plainly is an action for the recovery of the costs referred to in § 9607 because it is a claim by a PRP against other PRPs to recover response costs. Such a claim differs from a private cost recovery claim only in that the plaintiff in a contribution action is itself a PRP and other PRPs are severally liable rather than jointly and severally liable. See Centerior Serv. Co., 153 F.3d at 348. Since both §§ 9613(g)(3) and 9613(g)(2) were added to CERCLA by SARA long after the implied private right of action for contribution based on § 9607 became widely recognized by the courts, it is reasonable to conclude that Congress intended both provisions to be construed together to establish the limitation periods for all contribution claims.[13]

_____

[13] Subsection 9613(g)(2) also could be construed to apply to cost recovery claims brought by innocent parties, leaving § 9613(g)(3) as the sole statute of limitations for contribution actions. To adopt this construction, however, I either would have to conclude that Congress arbitrarily left several kinds of contribution claims without any statute of limitations or that § 9613(g)(3) should be judicially modified to include triggering

-16-

Construing §§ 9613(g)(3) and 9613(g)(2) together also leaves CERCLA with a rational means of establishing time limits for all contribution claims. Under this construction, § 9613(g)(3)'s three-year limitation period is triggered if a PRP becomes liable for response costs as a result of a readily identifiable event of obvious significance, such as the entry of a judgment or a settlement that is subject to administrative or judicial approval. All other contribution claims are subject to the time periods prescribed in § 9613(g)(2)'s general statute of limitations for actions to recover response costs.

In summary, a reasonable reading of CERCLA as a whole supports the conclusion that § 9613(g)(2) should be construed to supply the limitation periods for those contribution claims that are not expressly limited by § 9613(g)(3).

## C.

General Electric contends that § 9613(g)(3) is the only statute of limitations that governs contribution claims. In its

events that the provision does not contain. As I explain in the sections that follow, neither alternative is acceptable when the statute reasonably supports an alternative construction that avoids such results.

view, there are no gaps in the subsection to be filled by reference to § 9613(g)(2). If a contribution claim is not limited by § 9613(g)(3), it argues, the claim is not subject to any statute of limitations. I reject this argument.

While General Electric's construction of § 9613(g)(3) is plausible if the subsection is construed in isolation, it makes little sense when the text of CERCLA is construed as a whole. Moreover, its interpretation would produce absurd results in which cost recovery claims brought by innocent parties and certain contribution claims brought by PRPs would be subject to strict statutes of limitations but contribution claims brought by other PRPs could be delayed indefinitely. For example, an innocent party's claim to recover cleanup costs would be subject to the limitation period specified in § 9613(g)(2) whereas a PRP who voluntarily incurs the same costs could delay its cost recovery action indefinitely without fear that it would be barred by any statute of limitations. Further, a PRP who refuses to settle a cost recovery claim with the government and implements a cleanup only in response to a UAO could delay its contribution claim indefinitely but a PRP who agrees to incur the same costs pursuant to an administrative settlement would have only three

years to bring its claim. Because General Electric cannot offer any rational justification for such distinctions and the alternative construction I propose avoids them, I decline to adopt General Electric's interpretation of § 9613(g)(3). See United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 406 (1999) (adopting a plausible construction of a statute in part because it avoids peculiar results produced by alternative interpretations); Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982)("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

## D.

Defendants acknowledge that § 9613(g)(3) does not expressly limit General Electric's claims. Nevertheless, they argue that I should "borrow" the provision's three-year limitation period and recognize new triggering events for the subsection that would bar General Electric's claims. I decline to follow this suggestion.

If Congress fails to provide a statute of limitation for a federal cause of action, courts often will borrow an analogous limitation period from state law. See Wilson v. Garcia, 471 U.S.

-19-

261, 266-67 (1985). In certain limited circumstances, a court may instead turn to federal law for the missing statute of limitation. See, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 161-62 (1983). One such circumstance is where the claim at issue is based on a right of action implied under federal law. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 359 (1991). If the statute on which the implied right to relief is based contains an express cause of action with its own time limitations, "a court should look first to the statute of origin to ascertain the proper limitations period." Id. Defendants argue that I should follow this rule and borrow § 9613(g)(3) because it is the most analogous statute of limitations for contribution claims.

Defendants' argument is based upon a mistaken application of the borrowing doctrine. The Supreme Court has sometimes borrowed an otherwise inapplicable statute of limitation when Congress has failed to specify its own statute of limitation. The Court, however, has never suggested that it is appropriate to disregard an applicable statute of limitation and instead borrow a limitation period from another source. As I have already demonstrated, § 9613(g)(2) reasonably can be read to supply the

limitation periods for General Electric's claims.  Under these circumstances, I am not free to borrow another statute of limitation and judicially modify it to cover claims that are not encompassed by its text.  Since I can reasonably construe § 9613(g)(2) to cover General Electric's claims, I decline to adopt defendants' proposal to borrow and modify § 9613(g)(3).

## IV. CONCLUSION

For the foregoing reasons, I hold that § 9613(g)(2) establishes limitation periods for General Electric's contribution claims.  Because the parties have failed to fully brief the factual issues concerning the application of this statute of limitation to the claims before me, I deny the defendants' motion to dismiss (Doc. No. 17) without prejudice to defendants' right to raise the issue in a motion for summary judgment.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 30, 2001

cc:  Thomas N. Griffin, III, Esq.
     Michael J. Quinn, Esq.

-21-

Byrne J. Decker, Esq.
Michael D. Ramsdell, Esq.
Thomas H. Hannigan, Jr., Esq.
Jeffrey B. Osburn, Esq.