**AMERICAN SPECIAL RISK INS. CO., on behalf of the South Macomb Disposal Authority Plaintiff,**

v.

**CITY OF CENTERLINE, City of Eastpointe, City of Roseville, City of St. Clair Shores, and City of Warren, Defendants.**

No. 97–CV–72874–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 1999.

---

George F. Curran, III, Southfield, MI, for plaintiff.

Roger K. Timm, John A. Ferroli, Aren L. Fairchild, Detroit, MI, for defendants.

## OPINION

DUGGAN, District Judge.

In 1997, plaintiff, American Special Risk Insurance Company, formerly known as Cranford Insurance Company and International Insurance Company, filed a five count complaint on behalf of the South Macomb Disposal Authority ("SMDA") against defendants, the cities of Centerline, Eastpointe, Roseville, St. Clair Shores, and Warren, in the United States District Court for the Eastern District of Michigan, seeking indemnification pursuant to 42 U.S.C. § 9607(a) (Count I), contribution pursuant to 42 U.S.C. § 9613(f) (Count II), common law indemnification (Count III), common law contribution (Count IV), and unjust enrichment (Count V), stemming from remediation costs incurred by the SMDA under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Plaintiff filed this action on behalf of the SMDA under the authority of two insurance contracts between plaintiff and the SMDA. (Compl. at ¶¶ 21–23). This matter is before the Court on defendants' motion to dismiss, plaintiff's motion to disqualify the law firm of Dykema Gossett, PLLC, from representing defendants, and the SMDA's motion to intervene as defendant. A hearing was held on all motions on September 16, 1999.[1]

## I. BACKGROUND

### The Parties

The SMDA is a municipal corporation formed by the defendants for the purpose of collecting and disposing of garbage and rubbish.[2] (Compl., Ex. D, Art. I & II). The SMDA's Articles of Incorporation grant it the power to sue and be sued, to purchase property, and to enter into contracts for waste removal with any city, constituent or non-constituent, person, firm, or corporation. (Id. Art. IV, XIII, & XIV). The SMDA is governed by a five person board of directors. Each defendant possesses the right to appoint one director. (Id. Art. VII). The day-to-day administrative functions of the SMDA are performed by the SMDA's manager in compliance with the policies adopted by the board of directors. (Id. Art. XI). During the early 1970's, the SMDA owned and operated two landfills, sites 9 and 9A, located in Macomb Township. (Compl. at ¶¶ 12–15).

In addition to their roles as constituent members, each of the defendants is also a customer of the SMDA. Under their contracts with the SMDA, the defendants collect municipal waste from their residents and deposit it in waste disposal sites owned and operated by the SMDA. If any defendant refuses or neglects to contract with the SMDA for its waste removal purposes, it may be expelled from the SMDA. (Id. Art. XIX).

1. The SMDA's motion to intervene was not scheduled to be heard on September 16, 1999. Despite the fact that it was not formally scheduled for hearing, the Court indicated at the hearing on September 16, 1999, that based on its review of the briefs, the Court believed that the motion to intervene should be denied. The Court shall therefore set forth the basis for its ruling in this Opinion.

2. The SMDA was incorporated pursuant to the Garbage and Rubbish Disposal and Dog Pound Authority Act of 1947. *See* MICH. COMP. LAWS §§ 123.301—.310.

*The Insurance Policies*

In 1981, the SMDA obtained Environmental Impairment Liability (EIL) insurance for site 9A from plaintiff's predecessors, the Cranford and International Insurance Companies.[3] (Compl. at ¶ 18). Cranford issued one policy, effective from February 1, 1981, to February 1, 1982. (Compl. at ¶ 19). International issued two policies, effective from February 1, 1982, to February 1, 1983, and February 3, 1983, to February 4, 1984, respectively. (Compl. at ¶ 21). Each of the policies granted plaintiff, as insurer, the right to prosecute any claim for indemnity belonging to the SMDA.[4]

*Related Litigation*

There are two cases related to this litigation. In *Bielat v. South Macomb Disposal Authority,* a number of individual plaintiffs[5] filed suit against the SMDA and Macomb Township[6] alleging that the waste disposal activities at sites 9 and 9A had contaminated the ground water and created hazardous conditions.[7] *See Bielat v. South Macomb Disposal Auth.,* (Macomb County Cir. Ct. No. 84–612–AA).

The circuit court ordered the SMDA to take remedial measures with respect to sites 9 and 9A. *Id.*

Thereafter, the SMDA filed suit against American Special Risk and various other insurance companies in Macomb County Circuit Court seeking indemnification for costs associated with its defense and remediation orders arising out of the *Bielat* action. *See South Macomb Disposal Auth. v. Westchester Fire Ins. Co.,* (Macomb County Cir. Ct. No. 84–2686–CZ). As of September 9, 1999, the *Westchester* action is still pending.

*The Instant Action*

Plaintiff subsequently filed the instant action "on behalf of and in the name of" the SMDA[8] in the United States District Court for the Eastern District of Michigan seeking indemnification or contribution from the defendant cities for any and all costs incurred by the SMDA as a result of the remediation of sites 9 and 9A. Plaintiff asserts that it is entitled to indemnification or contribution on two grounds. First, plaintiff asserts that it is entitled to indem-

3. The SMDA contends that site 9 is also covered by the policies. (Compl. at ¶ 18).

4. The SMDA's EIL insurance policy with plaintiff's predecessor, the Cranford Insurance Company, states:

The Insurers shall be entitled, if they so desire, ... to prosecute *in the name of the Insured,* at their own expense and for their own benefit, any claim for indemnity or damages or otherwise against any persons and shall have full discretion in the conduct of such proceedings and in the settlement of any claim, and the Insured shall give all such information and assistance as the Insurers may require.

(Compl., Ex. A at 6, ¶ 3) (emphasis added). The SMDA's EIL insurance policies with the International Insurance Company contain similar language. (Compl., Ex. B at 7, ¶ 4).

5. The individual plaintiffs were later joined by D.U.M.P., Inc., a nonprofit corporation incorporated by Macomb Township residents, and the Attorney General of Michigan, representing the Michigan Department of Public Health, Michigan Department of Natural Resources, and the Water Resources Commission.

6. The plaintiff's had originally joined the cities of Warren, Roseville, East Detroit, Centerline, and St. Clair Shores, as defendants to the action. At the time of trial, however, the only two remaining defendants were the SMDA and Macomb Township.

7. The *Bielat* plaintiffs claimed that leachate from sites 9 and 9A had contaminated the ground water. *Bielat v. South Macomb Disposal Auth.,* (Macomb County Cir. Ct. No. 84–612–AA). Leachate, which is formed when water migrates through the soil and comes in contact with refuse, is a red, reddish-brown, or black substance that is accompanied by a foul odor. *Id.*

8. The insurance policy which gives plaintiff the right to bring this action provides that the insurer "shall be entitled ... to prosecute *in the name of the Insured,* at their own expense and for their own benefit, any claim for indemnity or damages ...." *See supra* note 4. Although plaintiff's complaint indicates that it is bringing this lawsuit "on behalf of" the SMDA, in this Court's opinion, it has no right to do so. It may, however, bring this action "in the name of" the SMDA for the insured's "own benefit."

**950**

nification or contribution because defendants, as customers of the SMDA, were the major generators and transporters of the waste deposited in sites 9 and 9A. Second, plaintiff asserts that it is entitled to indemnification or contribution because defendants exercised wrongful control[9] over the SMDA's board of directors and prevented the SMDA from obtaining the necessary funds to meet its duties and obligations by "controlling and directing their representatives on the SMDA Board to prohibit the SMDA from exercising its right to assess the [defendants] for the funds necessary to correct the environmental damage and instead causing the SMDA [to] pursue its insurers."[10] (Compl. at ¶ 31).

## II. DEFENDANTS' MOTION TO DISMISS

■ Defendants' filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) is designed to test whether, as a matter of law, a plaintiff is entitled to legal relief. *See Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir.1987). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When reviewing a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true. *Kerasotes Mich. Theatres, Inc. v. National Amusements,* 854 F.2d 135, 136 (6th Cir.1988), *cert. dismissed,* 490 U.S. 1087, 109 S.Ct. 2461, 104 L.Ed.2d 982

(1989). Although the complaint is construed liberally in favor of the party opposing the motion to dismiss, the Court is not obligated to accept legal conclusions or unwarranted factual inferences as true. *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987). To satisfy Rule 12(b)(6), a complaint must only "afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Westlake,* 537 F.2d at 858 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. at 103).

### *Plaintiff's Claims for Indemnification*

■ Plaintiff alleges two claims for indemnification, one pursuant to § 9607 of CERCLA (Count I) and one common law claim (Count III). (Compl. at ¶¶ 32–39, 46–52). Section 9607 imposes joint and several liability on:

[A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3). The Sixth Circuit, however, has recently held that a potentially responsible party ("PRP") is precluded from seeking joint and several liability under § 9607(a). *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.,* 153 F.3d 344, 356 (6th Cir.1998). According to the Sixth Circuit, "[c]laims by PRPs ... seeking costs from other PRPs are necessarily

---

**9.** Plaintiff alleges that defendants exercised wrongful control over the SMDA's board of directors by directing their representatives on the board in such a manner as to cause the SMDA to: "(1) ignore information, warnings and recommendations received from experts; (2) violate the requirements and conditions of the SMDA's permits and operating licenses, as well as other applicable statutes and regulations; and (3) receive repeated citations for such violations from governmental agencies."

(Compl. at ¶ 17). Plaintiff further alleges that defendants, through their wrongful control over the SMDA's board of directors, are responsible for the "improper design, construction, operation, maintenance and closure of Sites 9 and 9A." (Compl. at ¶ 34).

**10.** According to plaintiff, the SMDA was entitled to assess the defendants a prorated share of the remediation costs pursuant to Article XX.

actions for contribution, and are therefore governed by the mechanisms set forth in [§ 9613(f) ]." *Id.* at 350. Therefore, to maintain a cause of action for indemnification under § 9607, a plaintiff must first establish that it is not a PRP.

To establish that the SMDA is not a PRP,[11] plaintiff must establish that the SMDA has either undertaken a voluntary cleanup of the sites or that the SMDA is a truly innocent party.[12] *See id.* at 354; *see also Great Lakes Container Corp. v. Columbus Steel Drum Co.,* 54 F.Supp.2d 706 (E.D.Mich.1999). As illustrated by the *Bielat* action, the SMDA's clean-up efforts were clearly not voluntary. Furthermore, to establish that the SMDA is a truly innocent party, plaintiff must establish an innocent owner defense on behalf of the SMDA by demonstrating:

> 1) [T]hat another party was the "sole cause" of the release of hazardous substances and the damages caused thereby; 2) that the other responsible party did not cause the release in connection with a contractual, employment, or agency relationship with [the SMDA]; and 3) that [the SMDA] exercised due care and guarded against the foreseeable acts or omissions of the responsible party.

*Great Lakes Container Corp.,* 54 F.Supp.2d at 708 (citing *Trinity Am. Corp. v. United States Envtl. Protection Agency,* 150 F.3d 389, 396 (4th Cir.1998)). Upon review of plaintiff's complaint, the Court is not convinced that plaintiff can establish an innocent owner defense on behalf of the SMDA. As owner of sites 9 and 9A, the SMDA is clearly a PRP. Therefore, plaintiff is precluded from asserting claims for indemnification under § 9607(a) and defendants' motion to dismiss shall be granted regarding Counts I and III.

*Plaintiff's Claims for Contribution*

Plaintiff also alleges two claims for contribution. (Compl. at ¶¶ 40–45, 53–56). Although plaintiff is precluded from raising a claim for indemnification, plaintiff is not precluded from raising a claim for contribution. *See Centerior,* 153 F.3d at 356. Under § 9613(f), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title."[13] 42 U.S.C. § 9613(f).

To establish a *prima facie* case for contribution under § 9613(f), a plaintiff must establish four elements: (1) that the sites are facilities subject to CERCLA; (2) that a release or threatened release of a hazardous substance has occurred at the sites; (3) that the release has caused the plaintiff to incur necessary costs of response; and (4) that the defendant falls within one of the four defined categories of PRPs. *Centerior,* 153 F.3d at 347 (citing 42 U.S.C. § 9607(a)(1)-(4)). PRPs are defined as:

> (1) [T]he current owner or operator of a waste facility; (2) any previous owner or operator during any time in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility.

*Id.* at 347–48 (citing 42 U.S.C. § 9607(a)(1)-(4)).

Defendants do not dispute that § 9613(f) permits a person to seek contribution from another party who is liable or potentially liable. Defendants, however, contend that plaintiff cannot recover in this action against *these defendants* be-

---

**11.** Because plaintiff filed this cause of action "in the name of" the SMDA, the Court must evaluate defendants' potential liability *vis a vis* the SMDA, not plaintiff.

**12.** In *Centerior,* the Sixth Circuit expressly left open the question of whether a volunteer or truly innocent party could seek joint and several cost recovery under § 9607(a). *See Cen-*

*terior Serv. Co. v. Acme Scrap Iron & Metal Corp.,* 153 F.3d 344, 354 (6th Cir.1998).

**13.** As noted by the Sixth Circuit in *Centerior,* evaluation of a claim for contribution under § 9613(f) necessarily requires the Court to consider the elements of § 9607(a) because the two sections work in conjunction with each other. *Centerior,* 153 F.3d at 350.

cause these defendants fall within the definition of insured under plaintiff's insurance policies with the SMDA, which extend insurance coverage to "any officer, director, stockholder, partner or employee of the named insured while acting in his capacity as such." (Compl., Ex. A at 4, ¶ 7, Ex. B at 5, ¶ 7). Defendants assert that the term "stockholder" includes those associated with a nonstock corporation who function in a manner similar to stockholders in a stock corporation. According to defendants, because they exercise the same type of control over the SMDA as stockholders exercise over for-profit corporations, they should be deemed stockholders for purposes of insurance coverage. Defendants therefore argue that plaintiff is precluded from maintaining an action against them, as named insureds, because the instant action does not fit within the few circumstances under which Michigan law allows an insurer to sue an insured.[14]

■■■ Plaintiff contends that it is not precluded from bringing this action against these defendants because they are not "stockholders" and do not otherwise fit within the insurance contracts' definition of "insured." This Court disagrees. While it is true that these defendants do not own stock in the SMDA, they nevertheless function the same as "stockholders" in that they are the "owners" of the SMDA, they "elect" the SMDA's board of directors, and they "control" the SMDA in the same manner as stockholders "control"

a corporation. Therefore, to the extent that plaintiff's claims for relief against these defendants are based on defendants' "involvements with the SMDA," i.e., the defendants' role in directing the conduct or activities of the SMDA through their control over the SMDA's board of directors, plaintiff's claims must be dismissed.[15]

■■ While conceding that its complaint asserts liability against these defendants, in part, based on their control over the SMDA's board of directors,[16] plaintiff also asserts that it is bringing its claims directly against these defendants as individual arrangers, generators, and transporters of the hazardous waste deposited in sites 9 and 9A. Plaintiff argues that defendants' acts as arrangers, generators, and transporters of hazardous waste were not performed in their capacity as stockholders and, therefore, defendants do not fall within the definition of "insured" for such acts. This Court agrees.

■■ In addition to performing functions comparable to those of shareholders, these defendants were also customers of the SMDA. Plaintiff's complaint asserts that defendants, in their roles as "customers," "were generators and transporters of the bulk of the municipal waste placed within Sites 9 and 9A" and directly "contracted or otherwise arranged for disposal or treatment of waste." (Compl. at ¶ 41, 43). As such, plaintiff asserts that defendants are liable for contribution.[17] Plain-

---

**14.** Defendants view the instant action as between them and plaintiff as the Insurer, not as between them and the SMDA.

**15.** Plaintiff does not dispute the fact that the law does not permit an insurer to recover from its insureds for a loss covered by the policy. *See Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1352 (6th Cir.1996) ("[T]he general rule is that an insurer may not bring a subrogation action against its own insured.").

**16.** Plaintiff's counsel conceded this at the hearing on September 16, 1999.

**17.** Defendants argue that, because they fall within the definition of "stockholder" and are therefore insureds under plaintiff's insurance

contracts with the SMDA, plaintiff is precluded from bringing this action against them, even though the conduct for which plaintiff is seeking to impose liability on defendants was not conducted in their capacity as "stockholders" of the SMDA. This Court rejects defendants' argument. If plaintiff successfully establishes that defendants engaged in conduct as "customers," i.e., that they directly arranged, generated, or transported hazardous waste, defendants' "insurance policy" defense will not preclude plaintiff from seeking contribution. Defendants also argue that plaintiff's duty to act in good faith and deal fairly with its insureds precludes plaintiff from maintaining this action. Again, this Court rejects defendants' argument, noting that an insurer's duty of good faith does not preclude an insurer from filing a cause of action against an

tiff's complaint therefore sets forth a cause of action and defendants' motion to dismiss pursuant to 12(b)(6) shall be denied with respect to Counts II and IV to the extent that such claims are based on defendants' direct acts as arrangers, generators, and transporters of hazardous waste. Defendants motion to dismiss shall be granted, however, with respect to Count V, which is premised solely upon defendants' control over the SMDA's board of directors.

## III. PLAINTIFF'S MOTION TO DISQUALIFY OPPOSING COUNSEL

Plaintiff, citing a conflict of interest under Michigan Rules of Professional Conduct 1.6, 1.7, and 1.10, has filed a motion to disqualify Dykema Gossett, PLLC, from representing the defendant cities. According to plaintiff, a conflict of interest exists because Dykema Gossett is currently representing the SMDA in its defense and prosecution of the *Bielat* and *Westchester* actions,[18] two related actions that also involve the remediation of sites 9 and 9A. Because Dykema is currently representing the SMDA in related matters, plaintiff alleges that it is an improper conflict of interest for Dykema to represent the defendant cities in the instant action.

 "[A] party's right to have counsel of choice is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel." *Capacchione v. Charlotte–Mecklenburg Bd. of Educ.*, 9 F.Supp.2d 572, 579 (W.D.N.C.1998). Accordingly, motions to disqualify opposing counsel must be carefully scrutinized. Such scrutiny is warranted because:

[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the

insured for wrongful conduct that falls outside the parameters of the insurance contract.

attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing. We do not mean to infer that motions to disqualify counsel may not be legitimate, for there obviously are situations where they are both legitimate and necessary; nonetheless, such motions should be viewed with extreme caution for they can be misused as techniques of harassment.

*Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982) (internal citations omitted). Although parties do not have an absolute right to counsel of choice, " 'a party's choice of counsel is entitled to substantial deference.' " *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 975 F.Supp. 650, 654 (D.N.J. 1997) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993)).

 This Court does not believe that disqualification of Dykema Gossett, PLLC, is warranted. Dykema Gossett does not now, nor has it ever, represented plaintiff. The fact that Dykema Gossett represents the SMDA in other matters should not, in this Court's opinion, disqualify it from representing the five defendant municipalities in this action. Whether the defendants are represented by Dykema Gossett or some other law firm, plaintiff must establish its claim against the five defendant municipalities for their direct, independent conduct as arrangers, generators and transporters of hazardous waste. Plaintiff has not identified any "confidential information" that Dykema Gossett may obtain through its representation of the SMDA that would be detrimental to plaintiff's case; nor has it identified any factor which suggests that Dykema Gossett's attorney-client relationship with the SMDA will interfere with or hinder plaintiff's ability to prove its case against these defendants.

18. Dykema has also represented the SMDA, as well as the defendants, in a number of other actions. (Pl.'s Mot. to Disqualify Dykema Gossett, Ex. A).

Moreover, the "client" that creates the alleged conflict is the SMDA. The SMDA, however, has expressly consented to Dykema Gossett's representation of the defendants. Therefore, this Court does not believe a conflict exists. Plaintiff has brought no information to this Court's attention that would indicate that its ability to vigorously prosecute its claims is in any way hindered by Dykema Gossett's representation of the defendants. In sum, plaintiff has failed to illustrate how it would be prejudiced if Dykema Gossett continues to represent these defendants. This Court shall therefore deny plaintiff's motion to disqualify Dykema Gossett.

## IV. THE SMDA'S MOTION TO INTERVENE AS DEFENDANT

The SMDA has filed a motion to intervene as defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure. Rule 24 provides two methods for intervention: intervention as of right and permissive intervention.

### Intervention as of Right

■ A party shall be permitted to intervene as of right:

(1) when a statute of the United States confers an unconditional right to intervene; or

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. Proc. 24(a). To intervene as of right, the SMDA must establish four elements. First, the SMDA must establish that it filed a timely motion to intervene.[19] *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990). Second, the SMDA must establish that it has a substantial legal interest in the subject matter of the controversy. *Id.* Third, the SMDA

must establish that its ability to protect that interest may be impaired if it is not allowed to intervene. *Id.* Fourth, the SMDA must establish that its interest is not adequately represented by the current parties. *Id.*

### Substantial Legal Interest

■ The Sixth Circuit subscribes to a "rather expansive notion of the interest sufficient to invoke intervention as of right," under which an intervenor need not have the same degree of legal interest required to initiate a lawsuit. *Michigan St. AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir.1997). The Sixth Circuit has also "reject[ed] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Id.* at 1245 (quoting *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir.1991)). The substantiality of an intervenor's claimed interest is "necessarily fact-specific." *Id.*

The SMDA asserts that it has a substantial legal interest in "protecting harmonious and cooperative relations with each of the defendant cities." (Br. in Supp. of SMDA's Mot. to Intervene at 1). According to the SMDA, both the SMDA and the defendant cities have agreed not to pursue any potential claims against each other in an effort to maintain aligned interests.

### Impairment of the Legal Interest

■ An intervenor's burden in establishing impairment of a legal interest is minimal, requiring only that the intervenor show that impairment "*is possible.*" *Michigan St. AFL–CIO*, 103 F.3d at 1247 (emphasis added). The SMDA, however, fails to illustrate how this action will potentially impair or impede its legal interests. The SMDA's brief states:

SMDA wants to show this Court that this action is nothing more than a bad faith attempt by the plaintiff insurers to create an appearance of disharmony where none exists; and SMDA wants to defeat the attempt by the Insurers to make a mockery out of the policies SMDA purchased from them.

---

**19.** The timeliness of the SMDA's motion to intervene has not been challenged.

(Br. in Supp. of SMDA's Mot. to Intervene at 1). The SMDA fails to illustrate how its interests will possibly be impaired if it is not allowed to intervene. There is no reasoning to support that its relationship with the defendant cities will be strained or that it will be incapable of recovering meaningful support in the *Westchester* action. Instead, the SMDA provides only a statement of what it would like to show this Court if allowed to intervene.

*Inadequate Representation*

 To establish inadequate representation, an intervenor need only establish that the existing parties "may not adequately represent their interests." *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999). The intervenor is "not required to show that the representation will in fact be inadequate." *Michigan St. AFL-CIO*, 103 F.3d at 1247. "It may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.*

The SMDA argues that plaintiff cannot adequately represent its interests because the SMDA actually opposes this cause of action, which was brought in its name only. The SMDA, however, fails to demonstrate why the defendant cities' representation, the existing party who purports to seek the same outcome, will not adequately represent the SMDA. The defendant cities have every incentive to fully litigate the issue of their liability.

Because the SMDA has failed to convince the Court that its alleged interests will be impaired or impeded by the disposition of the instant action in its absence, or that the current parties cannot adequately represent its interests, the SMDA's motion to intervene as of right shall be denied.

*Permissive Intervention*

In contrast to intervention as of right, permissive intervention is appropriate "(1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. PROC. 24(b). It is within the Court's discretion to permit or deny intervention under such circumstances. "In exercising its discretion, the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

The SMDA asserts that its interests raise issues of law and fact that are common to defendants' claims. This Court is not persuaded that there is any basis for permitting the SMDA to intervene in this litigation. In this Court's opinion, the SMDA's rights will not be adversely affected by this litigation. Furthermore, under its policies of insurance with plaintiff, the SMDA granted plaintiff the right to bring this action "in its name." To allow the SMDA to intervene as a defendant would, in effect, place the SMDA on both sides of the litigation. The SMDA has chosen not to pursue its claims against defendants. By doing so, it has relinquished any interest that it may have had in the instant controversy. Plaintiff should be allowed to exercise its rights under the insurance contracts unimpeded. For the foregoing reasons, the SMDA's motion to intervene under Rule 24(b) shall similarly be denied.

An Order consistent with this Opinion shall issue forthwith.