**UNITED STATES of America,**
**Plaintiff,**

v.

**ATLAS LEDERER COMPANY,**
**et al., Defendants.**

No. 3:91cv309.

United States District Court,
S.D. Ohio,
Western Division.

July 13, 2005.

David F. Musel, Deborah M. Reyher, Gregory L. Sukys, Joseph W. C. Warren,

---

Matthew A. Fogelson, Thomas A. Benson, United States Department of Justice, Washington, DC, Patrick Dennis Quinn, United States Attorney's Office, Dayton, OH, Sherry L. Estes, Assistant Regional Counsel, Chicago, IL, for Plaintiff.

Ben Lefever Pfefferle, III, Baker & Hostetler LLP, Louis L. McMahon, Richard Paul Fahey, Richard A. Frye, Chester Willcox & Saxbe, Columbus, OH, Michael A. Cyphert, Walter & Haverfield, Martin Harry Lewis, Scott Alan Richardson, Thomas A. Linton, Ohio Bell Telephone Company, Cleveland, OH, Douglas G. Haynam, Louis E. Tosi, Shumaker Loop & Kendrick, Toledo, OH, Matthew Yackshaw, Day Ketterer Raley Wright & Rybolt, Canton, OH, Laura Alicia Ringenbach, Jonathan P. Saxton, William Roger Fry, Rendigs Fry Kiely & Dennis LLP, Stephen Neal Haughey, Frost Brown Todd LLC, Peter M. Burrell, Wood & Lamping, Cincinnati, OH, Charles H. Pangburn, III, Hemmer Spoor Pangburn Defrank & Kasson PLLC, Ft. Mitchell, KY, Jacqueline F. Allen, Philip R. Boxell, Pepper, Hamilton & Scheetz, Philadelphia, PA, Charles Patrick Houdyschell, Jr., Darrell V. McGraw, Jr., Charleston, WV, Martin A. Beyer, Sebaly Shillito & Dyer, Dayton, OH, Ralph C. Megargel, Delbene & Megargel, Kent, OH, for Defendants.

Acme Metals, pro se.

## DECISION AND ENTRY SUSTAINING PLAINTIFF'S RENEWED MOTION TO ENTER PROPOSED CONSENT DECREE (DOC. # 621)

RICE, District Judge.

This litigation arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. Plaintiff United States of America has settled its claims with the members of the United Scrap Lead Respondent Group ("Respondent Group"). Pursuant to § 107(a) and § 113(f) of CERCLA, 42 U.S.C. § 9607(a) and § 9613(f), the United States and the Respondent Group now seek to recover the costs they have incurred to remediate environmental contamination at the United Scrap Lead Company Superfund Site ("USL Site" or "Site") in Troy, Ohio, from other potentially responsible parties. At that Site, United Scrap Lead Company ("USL") collected used car, truck and industrial batteries from numerous businesses and individuals. The batteries were broken open to remove the lead cores and lugs, which caused the USL Site to become contaminated with hazardous substances, including lead and lead contaminated sulfuric acid. As a result of that contamination, the Site has been included on the National Priorities List. See 40 C.F.R. Pt. 300, App. B. The Respondent Group has agreed to fund the remedy which has resulted in the cleanup of that hazardous waste site.

The United States has settled its claims with four potentially responsible parties ("PRPs") and has lodged a proposed Consent Decree which reflects those settlements with the Court. See Doc. # 592. Those settlements would also resolve the Respondent Group's claims for contribution against those four PRPs. Thereafter, the United States filed a motion requesting that the Court approve and file that proposed Consent Decree. See Doc. # 605. Two memoranda opposing the Government's motion were filed, one from Defendant Senser Metals, Inc. ("Senser") (see Doc. # 610), and the other by Defendants Caldwell Iron & Metal, Norman's Auto Wrecking, Ace Iron & Metal, Inc., Larry Katz and Alan Levine (collectively "Caldwell"). See Doc. # 611.

In its Decision of March 21, 2005 (Doc. # 618), the Court overruled the Govern-

ment's motion, without prejudice. In particular, the Court noted that Senser and Caldwell had argued that the settlements were unfair, unreasonable and inadequate, because they were based upon a flawed allocation. The United States had defended the allocation in large measure with what it described as the "declaration" of Ben Pfefferle, III ("Pfefferle"), an attorney representing the Respondent Group.[1] Since that document was not signed under penalty of perjury, the Court concluded that it was not a declaration and that, therefore, the United States had failed to present evidence supporting its request that the Court approve its settlements. As a consequence, the Court directed the United States to renew its motion and to support its renewal with a declaration or affidavit by Pfefferle. The Court also indicated that it would rule upon the renewed motion on the basis of the memoranda which had been previously filed. The United States has filed its Renewed Motion to Approve Consent Decree (Doc. # 621). That renewed motion is supported by an affidavit from Pfefferle in which he attests under oath to the truth of the statements in his previously filed "declaration." The Court now rules upon the Government's renewed motion.

The Government has settled with Defendants Broadway Iron & Metal ("Broadway"), Barker Junk Company, Inc. ("Barker"), Moyers Auto Wrecking ("Moyers") and U.S. Waste Materials ("U.S.Waste") (collectively "settling PRPs"). The settlements with Moyers and U.S. Waste are predicated upon their limited ability to pay, with those PRPs agreeing to pay $34,000 and $9,000, respectively. The settlements with Broadway and Barker have been based upon a settlement allocation developed by the Respondent Group in 1999. However, those settlements have not employed the discount previously utilized to induce early settlements. If the proposed Consent Decree is entered by the Court, Broadway will pay $53,189.73, and Barker will pay $80,092.00,[2] with the four settlements resulting in the payment of $137,499.18 to the United States and $38,782.55 to the Respondent Group, a total of $176,281.73. If the Court were to adopt the proposed Consent Decree, the claims of the United States and the Respondent Group against the settling PRPs would be dismissed, and those Defendants would be provided protection against claims for contribution by other PRPs in accordance with §§ 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. § § 9613(f)(2) and 9622(h)(4).

The Government requests that the Court enter the proposed Consent Decree, in accordance with § 122(g) and (h) of CERCLA, which provide in pertinent part:

*(g) De minimis settlements*

(1) Expedited final settlement

Whenever practicable and in the public interest, as determined by the President, the President shall as promptly as possible reach a final settlement with a potentially responsible party in an administrative or civil action under section 9606 or 9607 of this title if such settlement involves only a minor portion of the response costs at the facility concerned and, in the judgment of the President, the conditions in either of the following subparagraph (A) or (B) are met:

---

1. That document is Exhibit A to the Plaintiff's motion (Doc. # 605).

2. The amount of the settlement with Barker has been discounted 35% below its allocation amount, in order to reflect the litigation risk

to the United States that it would fail to establish that Barker, a corporation, is the successor to the partnership which delivered batteries to the USL Site.

(A) Both of the following are minimal in comparison to other hazardous substances at the facility:

(i) The amount of the hazardous substances contributed by that party to the facility.

(ii) The toxic or other hazardous effects of the substances contributed by that party to the facility.

(B) The potentially responsible party—

(i) is the owner of the real property on or in which the facility is located;

(ii) did not conduct or permit the generation, transportation, storage, treatment, or disposal of any hazardous substance at the facility; and

(iii) did not contribute to the release or threat of release of a hazardous substance at the facility through any action or omission.

This subparagraph (B) does not apply if the potentially responsible party purchased the real property with actual or constructive knowledge that the property was used for the generation, transportation, storage, treatment, or disposal of any hazardous substance.

. . . . .

(5) Effect of agreement

A party who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially responsible parties unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

. . . . .

(7) Reduction in settlement amount based on limited ability to pay

(A) In general

The condition for settlement under this paragraph is that the potentially responsible party is a person who demonstrates to the President an inability or a limited ability to pay response costs.

(B) Considerations

In determining whether or not a demonstration is made under subparagraph (A) by a person, the President shall take into consideration the ability of the person to pay response costs and still maintain its basic business operations, including consideration of the overall financial condition of the person and demonstrable constraints on the ability of the person to raise revenues.

(C) Information

A person requesting settlement under this paragraph shall promptly provide the President with all relevant information needed to determine the ability of the person to pay response costs.

(D) Alternative payment methods

If the President determines that a person is unable to pay its total settlement amount at the time of settlement, the President shall consider such alternative payment methods as may be necessary or appropriate.

(8) Additional conditions for expedited settlements

(A) Waiver of claims

The President shall require, as a condition for settlement under this subsection, that a potentially responsible party waive all of the claims (including a claim for contribution under this chapter) that the party may have against other potentially responsible parties for response costs incurred with respect to the facility, unless the President determines that requiring a waiver would be unjust.

. . . . .

(11) No judicial review

A determination by the President under paragraph (7), (8), (9), or (10) shall not be subject to judicial review.

. . . . .

*(h) Cost recovery settlement authority*

(1) Authority to settle

The head of any department or agency with authority to undertake a response action under this chapter pursuant to the national contingency plan may consider, compromise, and settle a claim under section 9607 of this title for costs incurred by the United States Government if the claim has not been referred to the Department of Justice for further action. In the case of any facility where the total response costs exceed $500,000 (excluding interest), any claim referred to in the preceding sentence may be compromised and settled only with the prior written approval of the Attorney General.

. . . . .

(4) Claims for contribution

A person who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement shall not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9622(g) and (h).

In *United States v. Akzo Coatings of America,* 949 F.2d 1409 (6th Cir.1991), the Sixth Circuit addressed the standards which a District Court must apply when deciding whether to approve a cost recovery settlement entered in an action brought by the United States to recover costs under § 107(a) of CERCLA. In particular, the Sixth Circuit indicated that, "in addition to determining whether a decree is rational and not arbitrary or capricious, [the District Court] must satisfy [itself] that the terms of the decree are fair, reasonable and adequate—in other words, consistent with the purposes that CERCLA is intended to serve." *Id.* at 1435 (internal quotation marks and citations omitted). Although a District Court must not act as a rubber stamp when deciding whether to approve a consent decree, it is not permitted to substitute its judgment for that of the parties to the decree. *Id.* "Protection of the public interest is the key consideration in assessing whether a decree is fair, reasonable and adequate." *Id.* (citations omitted). While the effect of the consent decree on parties who have not settled should be considered, it is not determinative in the court's evaluation. *Id. See also, B.F. Goodrich v. Betkoski,* 99 F.3d 505, 514 (2d Cir.1996) (noting that the purposes of CERCLA include "facilitating efficient responses to environmental harm, holding responsible parties liable for the costs of the cleanup, and encouraging settlements that reduce the inefficient expenditure of public funds on lengthy litigation" (citation omitted)), *cert. denied,* 524 U.S. 926, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998).

■ Herein, an additional factor implicates this Court's review of the proposed Consent Decree. All four settlements reflected in that document are *de minimis* settlements. *See* 69 F.R. 5575–5576 (describing proposed Consent Decree as embodying *de minimis* settlements in Notice of Lodging Proposed Consent Decree). Section 122(g)(1) invests the President with discretion to determine whether to enter into such a settlement.

The settlements reflected in the Consent Decree are based, in part, upon the settlement allocation formula developed by the

Respondent Group,[3] which is the percentage of the total cost of remediating the USL Site for which each PRP is responsible.[4] To develop that formula, all available information was utilized, including records from USL and the United States Environmental Protection Agency ("EPA"), affidavits from PRPs and deposition transcripts. Based upon that information and building upon the earlier calculations of the EPA for some PRPs, the Respondent Group calculated a figure representing the total volume or weight of batteries contributed to the Site by each PRP. The figure for each PRP was derived from the remaining customer invoices of USL, which covered only five of the thirty-five years during which it had operated at the Site, its customer price list and deposition testimony from Charles Bailen ("Bailen"), a principal of USL. Bailen had explained the customer list during his deposition, testifying that the PRPs set forth on that list had been active customers of USL during the life of its operation. Bailen also identified the approximate volume of batteries each PRP included on the customer price list had contributed to the Site, using a general scale of low, medium, high and combinations of the three (i.e., low medium or high medium). Using the remaining customer invoices, the Respondent Group developed tiers for the PRPs included on the customer price list which corresponded to the rankings of PRPs for which there were invoices. In other words, if Bailen testified during his deposition that a particular PRP on the customer price list had supplied a medium volume of batteries to the Site, the allocation formula assigned that

PRP responsibility for 1,000,000 pounds, which Pfefferle indicated was, based upon USL's remaining customer invoices, the mid-point of the volume contributed by those PRPs who had been medium contributors. If Bailen identified a PRP as a customer, but could not remember the volume it had contributed, that PRP was assumed to have disposed of 100,000 pounds of batteries. The contribution figures for all PRPs were added together, resulting in a net volume of 170,024,740 pounds, which is comprised of 71,854,740 pounds, derived from the remaining invoices, and 98,170,000 such, derived from the customer price list and deposition testimony.[5] Each PRP was then assigned a percentage of the total responsibility.

As is indicated above, the Court has received objections to the settlements reflected in the proposed Consent Decree from Senser (*see* Doc. # 610) and Caldwell (*see* Doc. # 611). As a means of analysis, the Court will address the objections together, even though Caldwell has not joined in all objections asserted by Senser.

■ However, before engaging in that analysis, the Court will set forth its reasons for declining to hold an evidentiary hearing, as requested by both Senser and Caldwell. Whether to grant such an evidentiary hearing is committed to the discretion of the District Court. *In Re Tutu Water Wells CERCLA Litigation,* 326 F.3d 201, 209 (3d Cir.), *cert. denied,* 540 U.S. 984, 124 S.Ct. 472, 157 L.Ed.2d 375 (2003); *United States v. B.P. Amoco Oil PLC,* 277 F.3d 1012, 1017 (8th Cir.2002);

---

3. The allocation formula has been explained by Pfefferle.

4. The owners-operators of the USL Site were not assessed any share of the cost to remediate that Site, since they were known to be insolvent.

5. USL dealt with two types of contributors, to wit: brokers who supplied batteries they had obtained from upstream generators and direct generators. With respect to broker supplied batteries, the allocation formula attributed 75% of the volume to the upstream generator and 25% to the broker.

United States v. Cannons Engineering Corp., 899 F.2d 79, 93–94 (1st Cir.1990). Since "[r]equiring hearings to review the reasonableness of CERCLA consent decrees as a matter of course would frustrate the statutory objective of expeditious settlement," requests for evidentiary hearings are "routinely rejected." United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir.1994). The party seeking the evidentiary hearing has the burden of demonstrating the necessity of same. Cannons, 899 F.2d at 94. Senser and Caldwell have failed to meet that burden. In particular, they have failed to demonstrate that the lack of an evidentiary hearing has prevented them from presenting evidentiary materials or arguments. The Government has submitted evidentiary materials in support of its request that the Court approve the proposed Consent Decree. In addition, Senser has suggested that it should have an opportunity to cross-examine Pfefferle and Gregory Polonica ("Polonica"), who have respectively executed an affidavit and a declaration which the United States has submitted to support its request that the Court approve the proposed Consent Decree. However, Senser has failed to show why it could not have deposed those individuals, rather than requiring a lengthy evidentiary hearing. Therefore, the request for an evidentiary hearing is overruled.

Senser initially argues that the settlements are unfair, because they are based upon a meaningless allocation formula. Senser bases that assertion on the undisputed fact that customer invoices from USL exist for only a few years.[6] In support of that argument, Senser points to Chesapeake & Potomac Telephone Co. v. Peck Iron & Metal Co. of Virginia, 814 F.Supp. 1269, 1279 (E.D.Va.1992), which was an action under CERCLA by the entity that had agreed to cleanup a former battery recycling site against a number of PRPs that had disposed of batteries at that site. One of the issues addressed by the District Court therein was whether joint and several liability would be imposed upon the PRPs. Under CERCLA, joint and several liability is to be imposed, unless the party opposing such liability can demonstrate that the harm is reasonably apportionable. United States v. Township of Brighton, 153 F.3d 307, 318 (6th Cir. 1998). In concluding that such liability would be imposed, the District Court in Chesapeake, because it concluded that the harm was not reasonably apportionable, rejected the argument by the defendant/PRPs that each PRP should be held liable only for its contribution to the site. The District Court agreed that the harm was not apportionable, because records existed for only six of the fifteen years in which the site had been in operation, and, accordingly, imposed joint and several liability upon the PRPs. Like the District Court in Chesapeake, this Court has concluded that PRPs are subject to joint and several liability, because the harm is not reasonably apportionable. However, the issue before this Court is different than that which confronted the court in Chesapeake. This Court must now decide whether to approve a proposed consent decree, rather than addressing questions pertaining to reasonable apportionment or joint and several liability. Therefore, since the District Court in Chesapeake was not called upon to decide whether to ap-

---

6. According to Senser, invoices exist for only about four of the nearly forty years during which the USL Site was operated. Since Senser has not submitted evidence to support that point and the Government has submitted evidence to support its assertion that invoices for five of thirty-five years are extant, the Court concludes that invoices exist for five of the thirty-five years that the Site was operated.

prove a consent decree concerning the cleanup of a waste site for which records existed for less than 50% of the time in which it had been in operation, this Court does not consider that decision to support Senser's assertion that the settlements which underlie the proposed Consent Decree herein are unfair or otherwise objectionable.

On the contrary, this Court concludes that it is appropriate to use the allocation formula as a tool to assess the fairness of the settlements. In support of that conclusion, this Court relies upon *United States v. Cannons Engineering Corp.*, 899 F.2d 79 (1st Cir.1990), wherein the First Circuit noted that, accepting that the question of whether a particular settlement was substantively fair was linked to the comparative fault of the settling PRPs, the issue of how to measure that comparative fault remained. In addressing that issue, the First Circuit wrote:

> There is no universally correct approach. It appears very clear to us that what constitutes the best measure of comparative fault at a particular Superfund site under particular factual circumstances should be left largely to the EPA's expertise. Whatever formula or scheme EPA advances for measuring comparative fault and allocating liability should be upheld so long as the agency supplies a plausible explanation for it, welding some reasonable linkage between the factors it includes in its formula or scheme and the proportionate shares of the settling PRPs.

*Id.* at 87 (citations omitted). The First Circuit also noted that "a district court should give the EPA's expertise the benefit of the doubt when weighing substantive fairness—particularly when the agency, and hence the court, has been confronted by ambiguous, *incomplete*, or inscrutable information." *Id.* at 88 (emphasis added).

*See also, United States v. Grand Rapids, Michigan,* 166 F.Supp.2d 1213, 1222 (W.D.Mich.2000); *United States v. Kramer,* 19 F.Supp.2d 273 (D.N.J.1998). Herein, Senser has not questioned that all available information was utilized to develop the allocation formula. Moreover, it has not disputed that there is a reasonable linkage between the scheme selected by the EPA (the allocation formula) and the proportionate share of the settling PRPs, if only the available information is considered. Senser's complaint is with the limited availability of information concerning batteries disposed of by various PRPs at the USL Site. That shortcoming does not convince this Court to decline to enter the proposed Consent Decree. Indeed, given that CERCLA was enacted to provide for the cleanup of hazardous waste sites that were operated years ago, it is quite doubtful that complete records of the contribution by each PRP to a particular site are available. Therefore, if the Court were to agree with Senser that the limited availability of information concerning the volume of each PRP's contribution of batteries to the USL Site demonstrates that the settlements at issue are unfair, it would be effectively holding that *no* settlement under CERCLA in this matter would be fair. Moreover, Senser has not cited a single decision in which a court has declined to enter a consent decree proposed by the Government, because information concerning contributions of the PRPs to the hazardous waste site was incomplete.

Accordingly, the Court rejects the contention of Senser that it should decline to approve the proposed Consent Decree, because the settlements underlying it are based on information that is incomplete, rendering the allocation formula meaningless. On the contrary, the Court finds the allocation formula to be a fair and reason-

able method of assessing the comparative responsibility for purposes of settlement.[7]

The other aspect of Senser's contention that the settlements are unfair stems from the fact that U.S. Waste and Moyers are being permitted to pay less than the amount for which they are responsible under the allocation formula, as a result of the Government's decision to permit them to enter into ability-to-pay settlements. Senser contends that those settlements are unfair, because the Government has rejected its (Senser's) attempts to enter into such a settlement. Senser asserts, without evidentiary support, that "[y]ears ago Senser provided to the United States detailed evidence about its complete inability to pay anything approaching the millions of dollars that had been sought against Senser in this case." Doc. # 610 at 4. Senser also speculates that the other PRPs which have not been included in the settlements underlying the proposed Consent Decree currently under consideration would also be unable to pay the sum which the Government seeks to recover from them, yet they have not been offered the opportunity of entering into ability to pay settlements. Given that Senser has failed to offer evidentiary support concerning those matters (i.e., the inability of it and the other non-settling PRPs to pay what the Government is seeking to recover from them, their full disclosure of their financial records, their willingness to enter into ability-to-pay settlements and the Government's refusal to enter into such settlements with them), these matters do not cause the Court to decline to approve the proposed Consent Decree. Moreover, even if Senser had provided evidence to support its asser-tions, the Court would have rejected the argument, since CERCLA forbids judicial review of the Government's decision to enter into a reduced, ability-to-pay settlement. See 42 U.S.C. § 9622(g)(7) and (11). Accordingly, the Court rejects the assertion that the settlements are unfair, because the Government has afforded U.S. Waste and Moyers the opportunity to enter into ability to pay settlements, while denying Senser and the other non-settling PRPs the same opportunity.

According to Senser, the Settlements are inadequate and unreasonable, because four of the remaining eleven PRPs are being permitted to settle for the payment of the sum $176,281.73. Senser points out that the Government contends it has more than $9,000,000 in unreimbursed costs, which it is attempting to recover herein from the seven non-settling PRPs, all of which are closely held corporations. In addition, Caldwell contends that the settlements are unfair, since these settlements will leave over $9,000,000 of unreimbursed costs, with very few PRPs remaining to pay that amount. Senser and Caldwell also note that the Respondent Group has asserted claims of contribution against those seven non-settling PRPs, which could result in their being held liable for more than the $9,000,000 the Government is seeking. Neither Senser nor Caldwell has suggested what amount the settling PRPs should be required to pay in order to ensure that the settlements are fair, reasonable and adequate. Rather, although Senser and Caldwell do not expressly so state, these objections appear to be based upon the proposition that the

7. Caldwell also challenges the fairness of the settlements underlying the proposed Consent Decree, arguing, like Senser, that they are based upon a flawed and invalid allocation scheme since a valid allocation cannot be constructed from only five years of a total of thirty-five years of operations at the Site. See Doc. # 611 at 1–2. Indeed, in support of that argument, Caldwell has also cited Chesapeake. Id. at 2. For the reasons which the Court has rejected Senser's argument, it rejects that put forward by Caldwell.

Court should decline to approve any Consent Decree which does impose upon the settling PRPs the obligation that they are jointly and severally liable with the non-settling PRPs for the entire amount the Government and the Respondent Group are seeking to recover in this litigation. This Court cannot agree with Senser and Caldwell that the fact that approval of the Consent Decree will reduce the number of PRPs, from which the Government seeking to recover in excess of $9,000,000 and from which the Respondent Group is seeking an additional sum, from eleven to seven renders the settlements which underlie the proposed Consent Decree inadequate, unreasonable or unfair.[8]

As an initial matter, it bears emphasis that, since the settlements with U.S. Waste and Moyers are based upon their ability to pay, this Court is statutorily prevented from reviewing them. *See* 42 U.S.C. § 9622(g)(7) and (11). In addition, as is indicated above, all settlements are of the *de minimis* variety. CERCLA grants discretion to the President to enter into such settlements. *See* 42 U.S.C. § 9622(g); *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1044–45 (D.Mass.1989), *affirmed*, 899 F.2d 79 (1st Cir.1990).

Putting those statutory considerations aside, there is nothing unfair, unreasonable or inadequate about the amounts for which Government and the Respondent Group have agreed to settle their claims against the settling PRPs. *First*, Broadway will pay its full allocated share. Above, the Court has found that the allocation formula is a fair and reasonable method of assessing the comparative fault of

the various PRPs for purposes of settlement. *Second*, although Barker has been permitted to settle for a discounted, allocated share, that discount is reasonable, given that it is based upon the risk the Government will fail to prove that Barker is liable for the actions of the partnership which actually disposed of batteries at the USL Site. *Third*, the Government has furnished Polonica's declaration, in order to support the amounts for which it has agreed to settle with U.S. Waste and Moyers. Polonica is a financial analyst employed in the Corporate Finance Unit of the Antitrust Division of the Department of Justice. In his declaration, he reviews the steps he has undertaken on behalf of the United States to assess the ability of U.S. Waste and Moyers to pay. Based upon the information contained in that declaration, the Court concludes that the amount which the Court is requiring those two PRPs to pay is fair, adequate and reasonable.[9] With respect to Moyers, Polonica states that it has only $5,000 cash on hand and that its fixed assets are fully depreciated, meaning that it is unlikely Moyers would be able to borrow against those assets to raise additional funds in order to pay a greater amount in settlement. Despite the limited amount of cash on hand and ability to leverage its fixed assets, Moyers has agreed to pay $34,000. Polonica indicates that U.S. Waste is an inactive partnership, owning assets of very limited value (a commercial building which has environmental concerns and a note receivable on which no payments have been received for a number of years). The sole surviving partner of U.S. Waste also has limited assets. *See Cannons*, 899 F.2d at 87–90.

---

**8.** Caldwell also argues that the settlements are patently unreasonable and unfair, because the settling parties are not being required to pay their full, allocated shares. Doc. # 611 at

4. The Court also rejects that related argument.

**9.** The Court also rejects Senser's argument that Polonica's declaration is conclusory.

Senser next argues that the settlements are impermissible, because the proposed Consent Decree does not have a re-opener clause. The Court cannot agree. As an initial matter, there is no statutory requirement that the settlement of cost recovery claims, such as those asserted by Government's against the four settling PRPs, include such a clause. Section 122(f)(6)(A) of CERCLA, 42 U.S.C. § 9622(f)(6)(A), does require re-opener clauses in settlements involving remedial actions; however, that statute does not apply to cost recovery actions such as presented herein. *United States v. Hercules, Inc.,* 961 F.2d 796, 799–800 (8th Cir.1992) (holding that § 122(a)-(f) of CERCLA applies to remedial actions rather than to cost recovery actions). *Accord, State of Arizona v. Components, Inc.,* 66 F.3d 213, 216 (9th Cir.1995).

In addition, Senser bases this argument on *In re Acushnet River and New Bedford Harbor PCB Pollution,* 712 F.Supp. 1019 (D.Mass.1989). Therein, the court addressed the lack of a re-opener clause in the settlement of a natural resources damages action against one defendant. Such a clause would have permitted the United States to sue the defendant for damages to natural resources, caused by its release of PCBs, which were not known at the time of the settlement. The court concluded that a settlement without such a clause was not in the public interest. Herein, since the Government has not released the settling PRPs from their liability for natural resources damages, *In Re Acushnet River* is distinguishable. Moreover, the absence of a re-opener clause in the proposed Consent Decree does not render that document inconsistent with the public interest. The settlements underlying the

Consent Decree merely require four PRPs to pay certain amounts to the Government and to the Respondent Group. Those PRPs disposed of lead batteries at the USL Site, which were indistinguishable from those disposed of by other PRPs. In addition, the environmental damage at that Site has been thoroughly investigated, and a remedy has been selected. The Respondent Group has agreed to implement and to pay for that remedy. The Respondent Group has agreed to provide covenants not to sue to the settling PRPs. Therefore, since Senser has declined to explain the purpose that a re-opener clause would serve, the Court concludes that the absence of such from the proposed Consent decree does not render it contrary to the public interest.

In addition, Senser contends that it is impermissible under CERCLA to cut off its right to contribution for the response costs it has already incurred. In support of that argument, Senser relies upon *United States v. Hardage,* 750 F.Supp. 1460, 1493 (W.D.Okla.1990). That decision does not, however, support Senser's argument in that regard, since the District Court merely stated on that page that a *party objecting to the approval of a proposed consent decree had argued* that cutting off its right to contribution for already incurred response costs is impermissible. Moreover, § 113(f)(2) of CERCLA, 42 U.S.C. § 113(f)(2), which provides that the statutory right of contribution is extinguished by a judicially approved settlement,[10] does not contain language that would indicate that the contribution bar does not apply to response costs a PRP incurred before the Government settled with other PRPs. Accordingly, the Court rejects Senser's assertion that it is imper-

---

**10.** The statutory right of contribution is contained in § 113(f)(1) of CERCLA, 42 U.S.C.

§ 9613(f)(1).

missible under CERCLA to cut off its right to contribution for the response costs it has already incurred.

Senser claims that the settlements are contrary to the purposes of CERCLA, because they will further neither the cleanup of the USL Site (which has already been accomplished as a result of the Government's settlement with the Respondent Group) nor the recovery of its costs by the Government. The Court rejects this objection. Quite simply, the Government will recover a portion of the costs it has expended in the cleanup of that Site, if the Court approves the proposed Consent Decree. In addition, if furthering the goal of cleaning up hazardous waste sites was a condition precedent for approval of a settlement in a cost recovery action brought by the Government, it is difficult to see how any such action could be settled, since the purpose of a cost recovery action is to recover the amount the Government has expended, rather than to further the cleanup of a hazardous waste site.

Finally, Senser argues that the settlements are unconstitutional, because barring it from seeking contribution from the settling PRPs constitutes a taking of its property without just compensation and a deprivation of property without due process of law, all in violation of the Fifth Amendment to the United States Constitution. Since the ability of Senser to seek contribution is not a property interest, its constitutional challenge does not cause the Court to decline to approve the proposed Consent Decree. An express, statutory right of contribution for PRPs was created by § 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1); however, that right is limited by § 113(f)(2), 42 U.S.C. § 9613(f)(1), which bars a contribution action against

any PRP which has settled with the United States in a judicially approved settlement.[11] Therefore, Senser does not have a property interest in a statutory contribution action. In addition, the Supreme Court has held that a general federal common law right to contribution does not exist. *See Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that no federal common law right to contribution exists under federal antitrust laws); *Northwest Airlines v. Transport Workers Union of America*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (holding that there is no federal common law right to contribution under Title VII or the Equal Pay Act). Therefore, courts have consistently rejected the proposition that non-settling PRPs suffer a taking of property without just compensation or a deprivation of property without due process as a result of the contribution bar contained in § 113(f)(2). *See e.g., Cannons*, 899 F.2d at 93 n. 6; *United States v. Maryland Sand, Gravel and Stone Co.*, 1994 WL 541069 (D.Md.1994). Accordingly, the Court rejects Senser's argument that approval of the proposed Consent Decree will deprive it of its rights under the Fifth Amendment.

In sum, the Court has rejected the challenges by Senser and Caldwell to the proposed Consent Decree. On the contrary, this Court finds that the settlements embodied in the proposed Consent Decree are "fair, reasonable and adequate—in other words, consistent with the purposes that CERCLA is intended to serve." *Akzo Coatings*, 949 F.2d at 1435. Accordingly, the Court sustains the Plaintiff's Renewed Motion to Approve Consent Decree (Doc.

---

11. Sections 113(f)(1) and (2) were both added as part of the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99– 499, 100 Stat. 1613. *Centerior Service Co. v. Acme Scrap Iron & Metal*, 153 F.3d 344, 348– 49 (6th Cir.1999).

# 621). Said Consent Decree will be approved and filed forthwith.